## 2441

Barbara Jean Pfaff STEFAN, Respondent v. Karl L. STEFAN and Karl H. Stefan, of whom Karl L. Stefan is Appellant.

(465 S.E. (2d) 734)

Court of Appeals

*Donald L. Van Riper, Van Riper, Temple, Mann, Briggs & Hill;* and *Ronald F. Barbare, Lathan & Barbare,* Greenville, *for appellant.*

*Jefferson V. Smith, Jr., Carter, Smith, Merriam, Rogers & Traxler,* Greer, *for respondent.*

Heard Nov. 7, 1995.

Filed Dec. 28, 1995.

*Per Curiam:*

In this divorce action, the family court awarded custody of the parties' two minor children to Barbara Stefan, and suspended Karl Stefan's visitation rights until certain requirements were met. The family court also equitably distributed a Minnesota lake property between the parties, finding it marital property. The father appeals. We reverse and remand.

## Facts

The parties were married on June 2, 1984. Two children were born of the marriage: Karl Lawrence Stefan, born Octo-

ber 6, 1988, and Christopher Luck Stefan, born June 27, 1992. The wife filed this action on November 24, 1992. After various hearings, including numerous contempt hearings on temporary and interlocutory matters, the case was heard on July 25, 26, and 29, 1994. The husband's father, Karl H. Stefan, was added as a defendant because the husband attempted to convey the Minnesota lake property to his father after the filing of this action.

The family court found the husband "almost totally disregarded Court Orders related to visitation" during the pendency of this action, which the family court found to be excessively lengthy due to the husband's refusal to cooperate with discovery. The family court also found the husband:

> guilty of, *inter alia:* entering the wife's home uninvited in violation of the Order; refusing to leave when told to do so; making disparaging remarks about the wife in front of the children; splintering the door to the wife's home; engaging in immature and threatening behavior in the presence of the wife and children; committing other various acts of harassment; wilfully violating the Temporary Order which prohibited him from assaulting, harassing, annoying or interfering with the wife; again making disparaging remarks about the wife in front of the children; repeatedly calling the wife's home and making disparaging and harrassing remarks to the wife; calling the wife's mother and making disparaging and harassing comments to her; refusing to tell the wife the general whereabouts of the children during visitation; and refusing to return the children's clothes after visitation.

Based on these findings, the family court suspended the husband's visitation until he completed parenting skills classes, such other testing or training as the parenting professional deemed appropriate,[1] and asthma training. In the final order the family court judge appointed a guardian ad litem for the children and directed that the approval of the guardian would be required before visitation resumed. She directed the

---

[1] The order stated the parenting professional may require psychological or psyhiatric testing, Red Cross or other type child safety classes, cardiopulmonary (CPR) resuscitation training, baby-sitter training and child psychology courses.

father would receive four days of visitation per month once visitation was resumed. However, the family court judge ordered the guardian to recommend any changes in visitation once the husband completed training, and ordered the guardian to make recommendations for summer and holiday visitation. According to the order, upon receipt of the guardian's final report, "the Court shall issue an Order, either with or without further hearing as the Court may deem appropriate, either confirming that routine visitation as set forth . . . shall commence, or further modifying visitation in any manner the Court deems appropriate."

## I. *Visitation*

The father argues the family court abused its discretion by delegating judicial authority to the parenting specialist and the guardian, and by authorizing the guardian to recommend the time for the resumption of visitation, and modification of visitation.[2] We agree.

In the final analysis it is the family court which is charged with the authority and responsibility for protecting the interest of minors involved in litigation, not the guardian or any other person *whom* the court may appoint to assist it. While this court can appreciate the frustration of the family court in devising a visitation plan for the husband, it was error to delegate this responsibility to the guardian and the parenting specialist. We reverse that portion of the family court order which required the husband to attend sessions with a parenting professional and to undergo additional referrals in the parenting professional's discretion.

We also reverse that portion of the family court order which appointed a guardian for the children. This case proceeded through a year and a half of litigation prior to the merits hearing, which was held over a three-day period. Apparently because custody was not an issue, a guardian was not appointed during the pendency of the proceedings. In her final order, the trial judge appointed a guardian for the chil-

---

[2] These issues may not have been properly preserved. However, we address them because the rights of minors are at issue. *See Galloway v. Galloway*, 249 S.C. 157, 153 S.E. (2d) 326 (1967) (the appellate courts enjoy an extremely broad scope of review where the rights of minors are at issue; those rights take precedence over procedural rules otherwise limiting action by the court).

dren and directed him to perform certain tasks and to make recommendations prior to the husband's visitation being resumed. This was error. A guardian ad litem in a custody or visitation case represents and protects the interests of the children *during the litigation.*[3] Provided full right of cross-examination is afforded to ensure due process, a guardian's opinion and recommendations may be accepted into evidence. *Crowe v. Lowe,* 256 S.C. 321, 182 S.E. (2d) 310 (1971); *Collins v. Collins,* 283 S.C. 526, 324 S.E. (2d) 82 (Ct. App. 1984). Normally, however, the guardian's duties should end when the final order is issued.

While the husband's conduct and disregard for court orders caused the family court justifiable concern, it was not sufficient to serve as a basis for suspending his visitation rights, particularly in the absence of a guardian's recommendation that it would be in the children's best interest. We find the husband is entitled to visitation. Therefore, we remand this matter to the family court judge to set up a visitation schedule.

## II. *The Minnesota Property*

The father contends the family court erred in finding the Minnesota lake property marital. We agree.

The Minnesota property was owned by the husband's family before the parties were married. When the husband's *parents* divorced, the property was titled in the names of both parents. In 1988, prior to the remarriage of the husband's father, the father deeded his one-half interest to the husband. The parties paid no monetary consideration for the property. According to the wife, the parties expended $10,900.00 of marital funds on improvements to the property. The husband disputed this figure.

Nonmarital property is transmuted into marital property (1) if it becomes so commingled with marital property as to be untraceable; (2) if it is titled jointly; or (3) if it is utilized by the parties in support of the marriage or in some other manner so as to evidence an intent by the parties

---

[3] A guardian ad litem is defind as "a special guardian appointed by the court to prosecute or defend, in behalf of an infant or incompetent, a suit to which he is a party, and such guardian is considered an officer of the court to represent the interests of the infant or incompetent in the litigation." *Black's Law Dictionary* 635 (5th ed. 1979).

to make it marital property. *Johnson v. Johnson,* 296 S.C. 289, 295, 372 S.E. (2d) 107, 110 (Ct. App. 1988), *cert. denied,* 298 S.C. 117, 378 S.E. (2d) 445 (1989). "Transmutation is a matter of intent to be gleaned from the facts of each case. The spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as common property of the marriage." *Id.* at 295, 372 S.E. (2d) at 110-111. The use of marital funds in this case, without more, is insufficient to establish the intent necessary for transmutation of this asset.

It was error for the family court judge to include the entire value of the Minnesota property as a marital asset. We are mindful, however, that the family court judge indicated she awarded a higher percentage of total marital assets to the husband because she included the entire $40,000.00 attributable to the Minnesota property as a marital asset. Under these circumstances, we remand the issue of equitable division to the trial judge for her reconsideration in light of this opinion.

Reversed and remanded.

SHAW, CONNOR, and HEARN, JJ., concur.