577 S.E.2d 231

**Diane Cannon HARDY and James Hardy, Appellants,**

v.

**Shane Courtland Cannon GUNTER, Tyler Cannon Gunter, minors and John S. Gunter, Jr., Respondents.**

No. 3595.

Court of Appeals of South Carolina.

Heard Jan. 14, 2003.
Decided Feb. 3, 2003.

Raymond William Godwin, of Greenville; for Appellants.
Robert K. Whitney, of Seneca; for Respondents.

ANDERSON, J.

In this termination of parental rights case, Diane Cannon Hardy and James Hardy (mother and stepfather) appeal from an order of the family court denying their plea to terminate the parental rights of John S. Gunter, Jr. (the father) to his two minor children. We affirm.

## FACTS/PROCEDURAL BACKGROUND

The mother and father were married in April 1988. They have two children, Shane and Tyler, born on November 18, 1992 and March 1, 1995, respectively. During the marriage, the father retired as a major from the United States Air Force, having earned two master's degrees during his military service.

The mother and father separated in June 1996. During the same month, the father admitted himself to the Anderson Area Medical Center Psychiatric Ward where he was diagnosed with depression and drug addiction.

The parties were divorced by order of the family court dated November 8, 1996. Pursuant to the divorce decree, which embodied the parties' settlement agreement, the mother was granted full custody of the children. Visitation for the father was held in abeyance pending the father's compliance with requirements that he obtain a psychological evaluation from the Veteran's Administration (VA) and approval to visit the children from the guardian ad litem. The order specifically provided that "upon receipt of the recommendation of the Guardian Ad Litem ... the Court, without further hearing, may review the same and adopt the recommendation ... as the order of this Court, however, either party may request a hearing on the visitation as recommended within 30 days of the receipt of such recommendation." Determination of the father's child support obligation was held in abeyance.

In December 1996, the father began receiving disability payments totaling $1,345 per month.[1] Simultaneously, the

---

1. The father's disabilities include degenerative joint disease, nine knee surgeries, posttraumatic stress disorder, attention deficit hyperactivity disorder, and peripheral nerve damage stemming from his participation in Desert Storm.

parties' children each began receiving $212 monthly social security checks related to the father's disability status. The father has made no additional support payments for the children.

After the parties' divorce, the father moved to Florida in order to be near and assist his mother, who has been diagnosed with Alzheimer's disease, and his father, who has been diagnosed with congestive heart failure. In addition, the father's son from a former marriage resides in Florida.

Although the divorce degree specifically directed that the father's psychological evaluation be conducted through the VA and the father obtained two evaluations from the VA prior to the entry of the divorce decree, the guardian ad litem desired a doctor independent from the VA to do an evaluation. The father consented to have the evaluation performed by the doctor of the guardian's choosing. The guardian arranged for Dr. Spurgeon Cole to evaluate the father in her office on October 13, 1998. The father arrived at the guardian's office at the appointed time, but Dr. Cole did not appear. The father agreed to reschedule with Dr. Cole; however, at a December 8, 1998 interview with the guardian, he declared his reluctance to be evaluated by a psychologist whose base of operation was in Oconee County and expressed financial concerns about having the evaluation carried out by a doctor not associated with the VA. In August 1999, the father provided the guardian with the notes from a third evaluation administered by Dr. Phillip Tate of the VA in Florida. The father testified that he "was calling [the guardian] at least once every couple weeks ... to see what [he] could do to hasten the process." The father went on to state: "I know I've made lots of phone calls to try to make appointments, to have her call me. I've left you know, many, many messages and we ... went through my phone log ... and I think that she finally said that, 'Yes, you know, you have been trying to get in touch with me.' " The guardian admittedly received both the notes from the father's third evaluation and several follow-up telephone calls from the father; however, the guardian never made any proposal to the parties or the family court regarding the father's visitation with the children. The father has not visited with the children since the date of the divorce order holding the issue of visitation in abeyance.

The mother and stepfather were married in September 1997. On December 9, 1999, they instituted the instant action against the father, alleging the father's parental rights be terminated due to willful failure to visit and/or support the children and seeking an order of adoption establishing a parent/child relationship between the stepfather and the minor children. The mother and stepfather's complaint also alleged the father's parental rights should be terminated based on a diagnosable condition (drug addiction and mental illness), which condition was not likely to change within a reasonable time and rendered him unfit to provide minimally acceptable care for the children; however, the mother and stepfather abandoned this ground for termination at trial. Proceeding *pro se*, the father answered the complaint, denying the mother and stepfather were entitled to the requested relief.

By order dated October 16, 2000, the family court found the father's conduct following his separation and divorce from the mother did not constitute willful failure to visit and support the children. Accordingly, the court denied the mother and stepfather's petition for termination of the father's parental rights and ordered the guardian ad litem to enter a recommendation as to visitation between the father and children within fifteen days of the order. The mother and stepfather's post-trial motion for reconsideration was denied without a hearing.

## STANDARD OF REVIEW

In a termination of parental rights case, the best interests of the children are the paramount consideration. *South Carolina Dep't of Soc. Servs. v. Cummings*, 345 S.C. 288, 293, 547 S.E.2d 506, 509 (Ct.App.2001); *South Carolina Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct.App.2000); *South Carolina Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct.App.1999). Grounds for termination of parental rights must be proved by clear and convincing evidence. *Hooper v. Rockwell*, 334 S.C. 281, 297, 513 S.E.2d 358, 366 (1999); *South Carolina Dep't of Soc. Servs. v. Broome*, 307 S.C. 48, 52, 413 S.E.2d 835, 838 (1992) (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S.Ct. 1388, 1391–92, 71 L.Ed.2d 599, 603 (1982) (The United States Supreme Court held: "Before a State may sever com-

pletely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence.")); *Cummings,* 345 S.C. at 293, 547 S.E.2d at 509; *Parker,* 336 S.C. at 254, 519 S.E.2d at 354.

On appeal of a termination of parental rights case, the court of appeals may review the entire record to make a determination of the facts according to our view of the evidence. *Richland County Dep't of Soc. Servs. v. Earles,* 330 S.C. 24, 32, 496 S.E.2d 864, 866 (1998); *Cummings,* 345 S.C. at 293, 547 S.E.2d at 509. "This Court may review the record and make its own findings whether clear and convincing evidence supports termination." *Cummings,* 345 S.C. at 293, 547 S.E.2d at 509; *accord Parker,* 336 S.C. at 254, 519 S.E.2d at 354; *South Carolina Dep't of Soc. Servs. v. Humphreys,* 297 S.C. 118, 121, 374 S.E.2d 922, 924 (Ct.App.1988). "Our broad scope of review does not require us to disregard the findings below or ignore the fact the trial judge was in a better position to assess the credibility of the witnesses." *Cummings,* 345 S.C. at 293, 547 S.E.2d at 509; *accord Dorchester County Dep't of Soc. Servs. v. Miller,* 324 S.C. 445, 452, 477 S.E.2d 476, 480 (Ct.App.1996); *Berry v. Ianuario,* 286 S.C. 522, 525, 335 S.E.2d 250, 251 (Ct.App.1985).

Our supreme court has held that a finding of a willful failure to visit will not be predicated upon parental conduct that can be reasonably explained. *Wilson v. Higgins,* 294 S.C. 300, 305, 363 S.E.2d 911, 914 (Ct.App.1987), *rev'd in part on other grounds, Joiner ex rel. Rivas v. Rivas,* 342 S.C. 102, 536 S.E.2d 372 (2000). A finding of willful failure to support will not be predicated upon parental conduct that can be reasonably explained.

## *LAW/ANALYSIS*

### I. Failure to Support

The mother and stepfather claim the family court erred in not finding the father willfully failed to support the children from the time the parties separated in June 1996 until December 1996, and the failure, if proven, should serve as a

basis for termination of the father's parental rights. We disagree.

South Carolina Code Annotated section 20–7–1572(4) (Supp. 2001) provides for termination of parental rights upon a finding that termination is in the best interest of the child and:

The child has lived outside the home of either parent for a period of six months, and during that time the parent has wilfully failed to support the child. Failure to support means that the parent has failed to make a material contribution to the child's care. A material contribution consists of either financial contributions according to the parent's means or contributions of food, clothing, shelter, or other necessities for the care of the child according to the parent's means. The court may consider all relevant circumstances in determining whether or not the parent has wilfully failed to support the child, including requests for support by the custodian and the ability of the parent to provide support.

Whether a parent's failure to support a child is "willful" within the meaning of section 20–7–1572 is a question of intent to be determined by the facts and circumstances of each case. *Broome*, 307 S.C. at 52, 413 S.E.2d at 838; *South Carolina Dep't of Social Servs. v. Wilson*, 344 S.C. 332, 336, 543 S.E.2d 580, 582 (Ct.App.2001); *Parker*, 336 S.C. at 256, 519 S.E.2d at 355. Generally, the family court is given wide discretion in making this conclusion. However, the element of willfulness must be established by clear and convincing evidence. *Broome*, 307 S.C. at 52, 413 S.E.2d at 838; *Wilson*, 344 S.C. at 336, 543 S.E.2d at 582; *Parker*, 336 S.C. at 256, 519 S.E.2d at 355.

Initially, we note that the six month time period prescribed in section 1572 did not elapse between June 1996, when the parties' separated, and December 1996, when the children began receiving social security payments based on the father's disability status. The evidence is unchallenged that the father was in the process of applying for his social security benefits during that time span and was in fact disabled during that period, although the Social Security Administration had not declared him disabled. It is further undisputed that the children's social security benefits total $424 per month, only $60 short of the amount of the father's support obligation

under the Child Support Guidelines. Although the mother and stepfather correctly note that the children's social security benefits are not deducted from the father's benefits, we concur with the family court that the benefits are nonetheless available to the children due to the father's disability status and the father is deemed to have made a material contribution to their upkeep. Moreover, we agree with the family court's holding that even though the father could be ordered to contribute to child support in excess of the children's social security benefits, the family court has not had occasion to rule on the issue because it was not raised by any of the parties in this case.

Under these facts and circumstances, we find no error in the court's conclusion that the father's failure to pay support in addition to the children's social security benefits did not amount to a willful failure to support the children.

## II. Failure to Visit

The mother and stepfather next assert the family court erred in failing to determine the father willfully failed to visit the children. We disagree.

Section 20–7–1572(3) provides that parental rights may be terminated if termination is in the best interest of the child and:

> The child has lived outside the home of either parent for a period of six months, and during that time the parent has wilfully failed to visit the child. The court may attach little or no weight to incidental visitations, but it must be shown that the parent was not prevented from visiting by the party having custody or by court order. The distance of the child's placement from the parent's home must be taken into consideration when determining the ability to visit.

As with failure to support, a parent's "willful" failure to visit a child within the meaning of section 20–7–1572 is a question of intent to be resolved by the facts and circumstances of each case. *Broome,* 307 S.C. at 52, 413 S.E.2d at 838; *Wilson,* 344 S.C. at 336, 543 S.E.2d at 582; *Parker,* 336 S.C. at 256, 519 S.E.2d at 355. Ordinarily, the family court has extensive discretion in making this decision. Yet, the requirement of willfulness must be established by clear and

convincing evidence. *Broome,* 307 S.C. at 52, 413 S.E.2d at 838; *Wilson,* 344 S.C. at 336, 543 S.E.2d at 582; *Parker,* 336 S.C. at 256, 519 S.E.2d at 355.

In the initial divorce decree, the family court expressly held the issue of visitation in abeyance pending the father obtaining a psychological evaluation from the VA and the guardian providing the court with a recommendation as to visitation. It is uncontested the father obtained the evaluation by the VA in accordance with the order. Nonetheless, the guardian ad litem declined to make a recommendation because she desired an independent evaluation. Particularly in light of the father's initial efforts to comply with the guardian's superfluous requirement that he obtain a psychological evaluation from an "independent" doctor, we cannot conclude the father's failure to ultimately obtain an evaluation from a doctor of the guardian's choice amounted to either a failure to comply with the terms of the court's order or an election to forego his visitation with the children.

We reject the mother and stepfather's contention that the father's failure to request a hearing on visitation despite the lack of a recommendation from the guardian constituted an election not to visit the children. Under the express terms of the divorce decree, a request for a hearing was not to be made until after the guardian submitted a proposal as to visitation. Significantly, the same family court judge who issued the divorce decree determined in this action that "[s]ince the Guardian made no recommendations, the [father] correctly argues that no request for a hearing was authorized by the Order."

The case of *Stefan v. Stefan,* 320 S.C. 419, 465 S.E.2d 734 (Ct.App.1995) is controlling and edifying in regard to the issue of delegating judicial authority to a guardian to recommend the time for visitation. *Stefan* states:

> The father argues the family court abused its discretion by delegating judicial authority to the parenting specialist and the guardian, and by authorizing the guardian to recommend the time for the resumption of visitation, and modification of visitation. We agree.
>
> *In the final analysis it is the family court which is charged with the authority and responsibility for protecting*

*the interest of minors involved in litigation, not the guardian or any other person whom the court may appoint to assist it. While this court can appreciate the frustration of the family court in devising a visitation plan for the husband, it was error to delegate this responsibility to the guardian and the parenting specialist. ...*

*... In her final order, the trial judge appointed a guardian for the children and directed him to perform certain tasks and to make recommendations prior to the husband's visitation being resumed. This was error.*

*Id.* at 422–23, 465 S.E.2d at 736 (footnote omitted) (emphasis added).

▄▄▄ We caution family court judges *NOT* to delegate *any* responsibility to a guardian in regard to visitation of children with parents. We encourage the Family Court Bench and Bar to strictly adhere to the holding in *Stefan.*

Because the father was effectively enjoined from visiting the children even after he complied with the terms of the order, we cannot rule that he willfully failed to visit the children during the time the order was in effect.

▄▄▄ The mother and stepfather complain that the family court erred in failing to consider the best interests of the children in determining the father's parental rights should not be terminated. We find no reversible error.

Although the family court order does not directly address whether the children's interests would be best served by terminating the father's parental rights, we note that section 20–7–1572 requires both a finding as to the best interests of the child *and* proof of one or more of the enumerated statutory grounds before termination may be ordered. Inasmuch as the mother and stepfather failed to establish the requisite statutory grounds for termination, any error on the family court's part in not expressly ruling on the best interests of the children is of little consequence to the propriety of the court's order.

## CONCLUSION

We take this opportunity to remind the Bench and Bar that we disapprove of the length of time from the issuance of the

Order, dated November 8, 1996, and the response by the guardian and court on October 16, 2000. Children should not be held in limbo for an inordinate period of time. For the foregoing reasons, the decision of the family court is

**AFFIRMED.**

HEARN, C.J., and CURETON, J., concur.