THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Gail Wilkinson,       
Respondent,
 
 
 

v.

 
 
 
 David Jack Wilkinson and Paul Wilkinson,       
 Appellants.

 IN RE:

 Gail Wilkinson,        Respondent,
 
 
 

v.

 
 
 
David Jack Wilkinson,       
Appellant.
 
 
 

Appeal From Aiken County
C. David Sawyer, Jr., Family Court Judge

Unpublished Opinion No. 03-UP-150
Submitted January 13, 2003 - Filed February 20, 2003

AFFIRMED IN PART, REVERSED
IN PART, and REMANDED

 
 
 
R. Murray Hughes, of Pickens, for Appellants.
Timothy S. Mirshak, of Augusta, for Respondent.
 
 
 

PER CURIAM: David Jack Wilkinson appeals a family court order 
 equitably dividing marital property, awarding alimony and child support, and 
 suspending visitation rights with his two minor children. We affirm in part, 
 reverse in part, and remand. 
FACTS/PROCEDURAL HISTORY
David Wilkinson (Husband) and Gail Wilkinson (Wife) began living together in 
 Tennessee in 1980 and were married on September 28, 1983. They have two children: 
 Jacqueline Elizabeth Wilkinson, born on April 10, 1986, and David Bradley Wilkinson, 
 born on October 2, 1987. 
Prior to the marriage, Husband made a down payment on the Tennessee home in 
 which the parties lived. The house was titled in both parties' names and they 
 both worked to pay the mortgage and maintain the home. Following the marriage, 
 Wife continued to work instead of pursuing her teaching degree, while Husband 
 worked part-time for his father, Paul Wilkinson, and pursued his mechanical 
 engineering degree. When Husband obtained his degree, the parties agreed Wife 
 would stay home with the children after their son was born in 1987.
In 1990, the parties moved to Aiken, South Carolina, after Husband began working 
 for Westinghouse. The parties sold their Tennessee residence and used the money 
 as a down payment on a lakefront home in Aiken, which they titled in both names. 
 When the parties' son entered preschool, Wife resumed her college studies on 
 a part-time basis in order to obtain her teaching certificate. Wife continued 
 to be primarily responsible for the care of both children during this time, 
 including transporting them to various activities. 
Husband was laid off in early 1997; that May he accepted a position working 
 for Duke Power in Florida. The parties decided Wife and the children would remain 
 in Aiken. Husband did not return home for Wife's May 1997 graduation, although 
 Wife and their son went to visit Husband in Florida. Thereafter, Husband only 
 returned home to visit the family once in September and once in December. During 
 these visits, Husband barely spoke with Wife. Without Wife's knowledge, Husband 
 opened bank accounts in Florida and began depositing his paychecks there. Husband 
 sent Wife $1,500 a month to pay household bills, which he later reduced to $750 
 per month when Wife began teaching. 
In February, 1998, Husband was transferred to Charlotte. Once there, he refused 
 to give Wife or the children his home address or home telephone number. The 
 family's only means of contacting Husband was through a cellular telephone number. 
 In May 1998, Wife discovered a woman's shirt in Husband's laundry that he brought 
 home for her to launder. Thereafter, Wife contacted an attorney regarding separation 
 proceedings. Husband immediately began liquidating marital assets, including 
 cashing certificates of deposit. 
Wife filed for separate support and maintenance on September 24, 1998; Husband 
 was served on October 13. The next day, Husband wrote a check on the parties' 
 home equity line of credit for $49,600, thereby creating a second mortgage on 
 the home. He also took money out of the G.T.E. Federal Union money market account, 
 cashed in an IRA account, and cashed in two certificates of deposit. Including 
 the $49,600, Husband disposed of nearly $66,453 in marital assets. In so doing, 
 Husband gave a total of $54,500 to his father, Paul Wilkinson. He also paid 
 taxes and his attorney's fees out of the withdrawn. funds. 
At a temporary hearing on October 27, 1998, Wife was awarded custody of the 
 children and use of the marital home. Husband was granted liberal visitation 
 and was ordered to pay both mortgages on the home, $1,000 per month in child 
 support, and $450 per month towards Wife's $24,000 in credit card bills. At 
 the time of the temporary hearing, Wife was unaware Husband had dissipated the 
 marital assets. After this information came to light, the family court held 
 another hearing in July 1999. At that time the court ordered Paul Wilkinson 
 be made a party to the divorce proceedings and ordered Husband to immediately 
 place $54,500 in his attorney's trust account. The order also prohibited Husband 
 from disposing of marital assets. 
A pre-trial order was issued on July 13, 2000, in which the family court adopted 
 the parties' agreement that Wife would have custody of the children and Husband 
 would have liberal visitation. At some point during the litigation, the parties 
 agreed Husband could use the $54,500 in trust to pay off the $49,600 second 
 mortgage. Husband's attorney continued to hold the remaining funds in a trust 
 account pending final division of the marital property. 
The family court held a final hearing on July 21, 2000. At the outset, the 
 parties agreed to dismiss Paul Wilkinson as a party to the action, conditioned 
 upon his not asserting future claims against the parties or the marital assets. 
 Twenty-six exhibits were submitted into evidence without objection by either 
 party. Prior to the taking of testimony, Wife's attorney noted that the pre-trial 
 order resolved all issues regarding child custody, visitation, and the $54,500 
 held in trust. 
The family court issued a final order on September 14, 2000 dismissing Paul 
 Wilkinson as a party, incorporating the pre-trial order by reference, and establishing 
 the parties could not be reconciled. The court granted Wife a divorce on the 
 ground of one year's continuous separation, and affirmed the prior order awarding 
 custody of the two minor children to Wife. Citing Wife's testimony that Husband 
 held her hostage with a gun, resulting in the children's fearfulness and emotional 
 trauma, the court suspended Husband's visitation. The court further restrained 
 Husband from having any physical or telephone contact with the children and 
 from contacting Wife. In so doing, the court noted Husband could petition for 
 "restricted and supervised visitation in the future," and a guardian ad litem 
 would be appointed. 
The family court order also noted Husband was evasive throughout his testimony 
 and found him "simply not credible." In support of this finding, the court pointed 
 to Husband's selective memory regarding financial matters and his failure to 
 disclose an $1,800 a month per diem for housing and expenses. The court ordered 
 Husband to pay Wife $798 per month in child support, $900 a month in permanent 
 periodic alimony, and attorney's fees of $12,000. Because Husband failed to 
 submit a proposed division of the marital estate, the court equitably divided 
 the personal and real property, with each party receiving fifty percent, based 
 on Wife's submitted proposal. 
Husband filed a motion for reconsideration pursuant to Rule 59(e), SCRCP. Thereafter, 
 his attorney was relieved and the family court postponed the hearing on the 
 motion for reconsideration in order to allow Husband to obtain new counsel. 
 Husband failed to appear at the December 7, 2000 hearing on the motion, which 
 the family court denied. Husband now appeals. 
LAW/ANALYSIS
Standard of Review
In appeals from the family court, an appellate court has the jurisdiction to 
 find facts in accordance with its own view of the preponderance of the evidence. 
 Woodall v. Woodall, 322 S.C. 7, 471 S.E.2d 154 (1996); Fields v. Fields, 342 
 S.C. 182, 536 S.E.2d 684 (Ct. App. 2000). However, this broad scope of review 
 does not require the appellate court to "disregard the findings of the court 
 below." Stevenson v. Stevenson, 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981). 
 Further, the appellate court should not ignore the fact that the family court 
 judge was in a better position to view the witnesses and judge their credibility. 
 Cherry v. Thomasson, 276 S.C. 524, 280 S.E.2d 541 (1981); Smith-Cooper v. Cooper, 
 344 S.C. 289, 543 S.E.2d 271 (Ct. App. 2001). The standard of review does not 
 relieve the appellant of the burden to convince the appellate court that the 
 family court erred. Fields, 342 S.C. at 186, 536 S.E.2d at 686. 
Discussion
I. Special Equity
Husband argues the family court erred in failing to consider that he obtained 
 the lot in Aiken on which the martial home was built prior to the marriage, 
 or that the money he put down to acquire the marital home in Aiken was non-marital. 
 We disagree. 
Husband testified at the final hearing that he purchased the couple's home 
 in Tennessee and used the funds from its sale as the down payment on the Aiken 
 marital residence. Wife, however, testified the Tennessee home was titled in 
 both names and both parties worked to pay the mortgage and maintain the home. 
 Husband asked the family court to order the sale of the Aiken home and consider 
 the down payment on it as his non-marital property. There was no testimony regarding 
 a separate purchase of the lot upon which the Aiken home was situated. 
The family court determined the Aiken residence was marital property titled 
 in both parties' names. Although Husband testified he purchased the home with 
 funds derived from the sale of the pre-marriage Tennessee residence, the court 
 found he "produced no documentary evidence to substantiate a claim that the 
 present marital residence is anything but marital property" subject to equitable 
 division. 
Marital property includes all real and personal property acquired by the parties 
 during the marriage. S.C. Code Ann. § 20-7-473 (Supp. 2002). Non-marital property 
 is "property acquired by either party before the marriage and property acquired 
 during the marriage in exchange for property acquired by either party before 
 the marriage." Corbett v. Corbett, 313 S.C. 184, 186, 437 S.E.2d 136, 138 (Ct. 
 App. 1993). A spouse, however, has a special vested equity interest in improvements 
 to property to which he or she has contributed, whether the property is marital 
 or non-marital. See S.C. Code Ann. §20-7-471 (Supp. 2002); Calhoun v. Calhoun, 
 331 S.C. 157, 501 S.E.2d 735 (Ct. App. 1998), reversed in part on other 
 grounds, 339 S.C. 96, 529 S.E.2d 14 (2000). 
The evidence presented at the final hearing showed the Aiken residence was 
 purchased during the marriage and titled in both parties' names. Husband did 
 not present any evidence indicating he purchased the lot upon which the residence 
 was built prior to the marriage. He also failed to present any evidence the 
 money used as the down payment on the residence was from separate, non-marital 
 funds. The family court, therefore, did not err in finding the residence was 
 marital property and in denying Husband's special equity claim. 
II. Equitable Division
Husband also asserts the family court erred by adopting Wife's proposed distribution 
 of marital assets. We disagree. 
At the hearing, Husband admitted taking $49,600 from the parties' home equity 
 line of credit, in addition to various investment funds, after the divorce action 
 was filed, but claims it was used to repay his father for a $60,000 loan and 
 to pay other marital bills. Specifically, Husband admitted taking the following: 
 (1) $14,000 from a Fidelity IRA account worth $17,427; (2) $25,000 from several 
 GTE accounts and certificates of deposit; (3) a $7,000 loan from his Duke Power 
 retirement plan; (4) $3,750 from an AT&T credit union account; and (5) 96 
 shares of CBS (now Viacom) stock certificates. 
Husband also admitted that, in addition to his salary, he received an $1,800 
 monthly per diem from Duke Power to pay rent and utilities in Charlotte since 
 he listed his residence as his father's address in Tennessee. Husband stated 
 he did not disclose the monthly per diem his financial declaration, despite 
 including rent and utilities as obligations, because he believed it did not 
 count as income. Further, Husband admitted he overwithheld income tax and received 
 a tax refund in 1999, which he also failed to disclose. 
Husband did not submit a proposed division of either personal or real property, 
 or any other marital assets. Despite three appraisals all valuing the marital 
 home at $141,000, Husband argued the court should value the home above the appraised 
 value. He also asked to court to order the home sold and to equally divide the 
 profits between the parties. During his testimony, Husband continually was evasive 
 in many answers, prompting the court to admonish him several times. 
Without objection, Wife submitted a proposal for an even distribution of the 
 marital property at the final hearing. She proposed attributing the original 
 value of all assets dissipated by Husband, not their current value, to Husband. 
 Wife also proposed that she be awarded the $141,000 value of the marital home, 
 minus the $43,288 first mortgage and $11,280 representing an 8% cost of sale, 
 for a total value of $86,492. Wife's proposal also assigned all of the $24,000 
 in credit card debt to her, in addition to her retirement plan funds, and $2,242.50 
 from the CBS stock. Thus, Wife's proposal gave both parties total assets of 
 $66,052.50. Wife also submitted a list of personal property, including assigned 
 values, and a proposal for dividing the property between them. 
In the final order, the family court found Husband had liquidated marital assets 
 and withdrawn nearly all equity in the marital residence by "taking a cash advance 
 against the home equity loan and transferring those funds to his father." The 
 court also found Husband liquidated part of his individual retirement account 
 and certificates of deposit without disclosing his actions to Wife. 
Regarding personal property, the court adopted Wife's proposed division, noting 
 Husband neither submitted a proposed list or valuation nor challenged Wife's 
 proposal. Since the parties' daughter was actively involved in horseback riding, 
 the court awarded Wife the horses and horse trailer, stating she would be responsible 
 for all associated costs. In addition, the court awarded Wife the marital home, 
 making her responsible for all outstanding indebtedness effective August 1, 
 2000. Husband's obligation to pay both mortgages on the marital residence remained 
 in effect through July 31, 2000, and the court ordered him to execute legal 
 documents to convey title and any interest in the marital home to Wife. 
The family court equitably divided the remainder of the marital property, without 
 objection from Husband, as follows: 

 
 
 
 Wife
 Husband
 
 
 (1) Her SC Retirement Plan (1) His Parsons 401(k)
 (2) 34 shares of CBS common stock (2) 69 shares of CBS common stock
 (3) $3,223.50 from general trust (3) $3,223.50 from general trust account of Husband's
 former attorney
 (1)
 His Parsons 401(k)
 (2) 69 shares of CBS common stock
 (3) $3,223.50 from general trust account of Husband's former attorney
 (4) His Fidelity IRA
 (5) His GTE Credit Union CDs
 (6) His Duke Power Lifetracks Retirement Savings Plan
 (7) His AT&T Credit Union account
 
 
 

In so doing, the family court specifically found Husband had "dissipated marital 
 assets" since the filing of Wife's action, including liquidating the Fidelity 
 IRA, the GTE Credit Union certificates of deposit, and the AT&T Credit Union 
 account, and also borrowing against his Duke Power retirement plan.
Husband now argues the division of the property was inequitable because the 
 court did not value the property as of the date he was served. He further argues 
 the court erred in reducing the marital home's value by $11,280, an estimated 
 cost of sale, because the marital home was not sold. 
"The apportionment of marital property will not be disturbed on appeal absent 
 an abuse of discretion." Bungener v. Bungener, 291 S.C. 247, 251, 353 S.E.2d 
 147, 150 (Ct. App. 1987). The appellate court must look to the overall fairness 
 of the apportionment, and "it is irrelevant that this court might have weighed 
 specific factors differently than the family court." Bragg v. Bragg, 347 S.C. 
 16, 24, 553 S.E.2d 251, 255 (Ct. App. 2001) (citing Johnson v. Johnson, 296 
 S.C. 289, 300-01, 372 S.E.2d 107, 113 (Ct. App. 1988)). 
In general, the value of marital property for the purposes of equitable distribution 
 is the value of the property at the time of the commencement of the marital 
 litigation. See Mallett v. Mallett, 323 S.C. 141, 473 S.E.2d 804 (Ct. App. 1996). 
 In dividing marital property, the family court must consider fifteen statutory 
 factors. See S.C. Code Ann. § 20-7-472 (Supp. 2002). The court may also consider 
 willful misconduct, including the purposeful dissipation of marital assets, 
 in determining the equitable distribution of such assets. See Dixon v. Dixon, 
 334 S.C. 222, 512 S.E.2d 539 (Ct. App. 1999) (holding the family court should 
 have considered value of family business at the commencement of the divorce 
 action instead of zero value of the business at the time of the final hearing, 
 where husband deliberately destroyed business to keep wife from obtaining any 
 of its value); see also McDavid v. McDavid, 333 S.C. 490, 496, 511 S.E.2d 365, 
 368 (1999) ("[T]here must be some evidence of willful misconduct, bad faith, 
 intention to dissipate marital assets, or the like, before a court may alter 
 the equitable distribution award for such misconduct."). 
Husband is primarily concerned with the family court's valuation of the parties' 
 investments, arguing the values submitted by Wife were not accurate. Husband, 
 of course, never objected to Wife's proposed division or valuation of the marital 
 property, except for he value of the marital home. 
Although the parties' investments were worth substantially less at the time 
 of the final hearing than the time of filing, the family court specifically 
 found Husband purposefully dissipated these assets. As a result, the court chose 
 to assign the investments their pre-dissipation value. Further, the court relied 
 upon the established appraisals in assigning value to the marital home. As there 
 was ample evidence to support the family court's findings, we find no error 
 in the valuation of the marital home and investments. 
However, nothing in the record evinces a basis for the $11,280 deduction from 
 the marital home's value representing an 8% cost of sale. Furthermore, the marital 
 home was not sold but was awarded to Wife. Accordingly, we find the family court 
 abused its discretion in reducing the value of the marital home by $11,280, 
 and the equitable distribution should be adjusted accordingly. 
III. Alimony 
Husband argues the family court erred in considering Wife's testimony regarding 
 abuse and Husband's per diem in awarding Wife alimony. He also states the $900 
 per month award of alimony is excessive when considering the amount of child 
 support he is required to pay. 
Wife submitted her financial declaration at the final hearing reflecting a 
 net monthly income of $2,063.39 and monthly expenses of $3,414.75. Husband's 
 financial declaration indicated he earned $5,300 per month, not including the 
 $1,800 monthly per diem; at the same time, Husband included $1,175 in rent, 
 utilities and food, in his list of monthly expenses. 
At the time of trial, Wife had only been working as a teacher for three years. 
 Dr. Sheehan, principal of the school where Wife taught, testified she was an 
 excellent teacher. Sheehan also testified that if Wife had begun working as 
 a teacher in 1986, she would have been earning an additional $9,000 per year. 
 Husband's only argument regarding alimony at the final hearing was that he did 
 not want Wife to be awarded alimony because she received child support. 
In awarding Wife $900 in monthly alimony, the family court considered the seventeen-year 
 length of the marriage, the fact Wife remained at home and delayed pursuing 
 her teaching degree for a substantial length of time, and the fact Wife supported 
 Husband both financially and non-economically while he pursued his engineering 
 degree. The court also noted the parties relocated to allow Husband to pursue 
 career advancements. As a result, there was a great disparity in the parties' 
 income. Although the family court found the award appropriate under the statutory 
 factors enumerated in § 20-3-130, the court did not indicate it considered Wife's 
 testimony regarding the alleged abuse in rendering its alimony decision. 
Whether to award alimony is a decision within the discretion of the family 
 court that will not be disturbed on appeal absent an abuse of that discretion. 
 See Allen v. Allen, 347 S.C. 177, 554 S.E.2d 421 (Ct. App. 2001); Williams v. 
 Williams, 297 S.C. 208, 375 S.E.2d 349 (Ct. App. 1988). "Alimony is a substitute 
 for the support which is normally incident to the marital relationship" and 
 should place the supported spouse in the same position he or she enjoyed during 
 the marriage. Johnson v. Johnson, 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct. 
 App. 1988). The family court must make an alimony award that is "fit, equitable, 
 and just if the claim is well founded." Allen, 347 S.C. at 184, 554 S.E.2d at 
 424.
The statutory factors include: (1) duration of the marriage; (2) physical and 
 emotional health; (3) educational backgrounds; (4) employment history and earning 
 potential; (5) standard of living established during the marriage; (6) current 
 and reasonably anticipated earnings; (7) current and reasonably anticipated 
 expenses; (8) marital and nonmarital property; (9) custody of children; (10) 
 marital misconduct or fault; (11) tax consequences; (12) prior support obligations; 
 and (13) other factors the court considers relevant. See S.C. Code Ann. § 20-3-130(C) 
 (Supp. 2002). No one particular factor is dispositive. Lide v. Lide, 277 S.C. 
 155, 283 S.E.2d 832 (1981). 
Here, the family court emphasized the disparity in the parties' earnings and 
 the earning potential Wife gave up in order to run the household and care for 
 the parties' children. Although $900 per month alimony is a generous award, 
 there is support for the award in the record. Conversely, nothing in the record 
 supports Husband's argument that the family court considered Wife's testimony 
 regarding the alleged abuse in making its determination on alimony. Further, 
 Husband's argument that the award is excessive in light of the child support 
 award consists of one sentence and is conclusory to such an extent that it could 
 be deemed abandoned. Because the record reveals the family court considered 
 the statutory factors and did not consider Wife's abuse testimony, we find no 
 error. 
IV. Visitation 
Husband next argues the family court erred in suspending his visitation with 
 the children. We agree. 
In the pre-trial order, the parties agreed Wife would maintain custody of the 
 children and Husband would have "such reasonable and liberal rights of visitation 
 as may be agreed by the parties." Then, at the final hearing, Wife's attorney 
 confirmed the order resolved all issues regarding child custody, visitation, 
 and the $54,500 held in trust. Wife testified she encouraged Husband to visit 
 with the children during their separation, but that his visits were "brief and 
 sporadic," adding that she no longer wanted Husband to have visitation. Husband's 
 testimony, on the other hand, centered on the equitable distribution of the 
 marital property such that he did not make any requests regarding visitation. 

In reply, Wife explained why she no longer wanted Husband to have visitation, 
 stating Husband had come to the marital home the weekend before the final hearing 
 to return their son from a camping trip. Wife claimed that after both children 
 had left the house, Husband grabbed her at gunpoint, threatened to kill her, 
 and demanded that she agree to $950 in child support and to pay him $80,000 
 for the marital home. Wife said she later told the children about the incident, 
 and that they were very afraid. In support of her testimony, Wife submitted 
 photos of bruises she allegedly sustained in the struggle. Although Husband 
 failed to object to this testimony, the family court allowed him to proffer 
 testimony denying the incident ever occurred. 
In the final order, the family court incorporated the pre-trial order by reference 
 as "part and parcel" of the final order, but also suspended Husband's visitation 
 rights. The order noted Husband could petition for restricted and supervised 
 visitation in the future, and that it would appoint a guardian ad litem 
 to determine appropriate visitation if requested. In so doing, the court stated 
 "the best interests of the children are paramount in this matter." 
The determination of visitation is a matter within the broad discretion of 
 the family court, and the court's decision will not be disturbed on appeal absent 
 an abuse of discretion. Woodall v. Woodall, 322 S.C. 7, 471 S.E.2d 154 (1996); 
 Paparella v. Paparella, 340 S.C. 186, 531 S.E.2d 297 (Ct. App. 2000). The primary 
 consideration in awarding visitation is the welfare and best interest of the 
 child. Woodall, 322 S.C. at 12, 471 S.E.2d at 158; Frye v. Frye, 323 S.C. 72, 
 448 S.E.2d 586 (Ct. App. 1994). The family court has the discretion to place 
 restrictions on visitation as the court deems proper. Frye, 323 S.C. at 76, 
 448 S.E.2d at 588. 
The termination of visitation is a drastic remedy that should be used sparingly. 
 Venable v. Venable, 273 S.C. 96, 254 S.E.2d 309 (1979); Hyde v. Hyde, 302 S.C. 
 280, 395 S.E.2d 186 (Ct. App. 1990). The family court, however, "has the power 
 to absolutely forbid visitation in an extreme case." Hyde, 302 S.C. at 281, 
 395 S.E.2d at 187. 
 In Stefan v. Stean, 320 S.C. 419, 465 S.E.2d 734 (Ct. App. 1995), a husband 
 repeatedly violated family court visitation orders by (1) entering the wife's 
 home uninvited and refusing to leave; (2) splintering the door to wife's home; 
 (3) acting in a threatening manner in front of wife and the children; (4) harassing 
 and calling the wife; disparaging the wife in the children's presence; (5) refusing 
 to inform the wife about the children's whereabouts during visitation; and (6) 
 refusing to return the children's clothes after visitation. The family court 
 suspended the husband's visitation rights, ordering him to obtain the approval 
 of a guardian ad litem and complete parenting classes before visitation could 
 be resumed. This Court reversed, holding that "[w]hile the husband's conduct 
 and disregard for court orders caused the family court justifiable concern, 
 it was not sufficient to serve as a basis for suspending his visitation rights, 
 particularly in the absence of a guardian's recommendation that it would be 
 in the children's best interest." Stefan, 320 S.C. at 423, 465 S.E.2d at 737. 

As an initial matter, it does not appear Husband's right to visitation was 
 an issue the parties intended to litigate in the final hearing. At the beginning 
 of the hearing, Wife's attorney announced the issue was resolved in the pre-trial 
 order; thereafter, the family court incorporated it into the final order. Thus, 
 even assuming Husband in fact unreasonably threatened Wife, we find the family 
 court abused its discretion in suspending visitation. The children did not witness 
 the events testified to by Wife. Moreover, nothing in the record indicates Husband 
 ever acted inappropriately towards the children at any time. Although the restraining 
 order forbidding Husband from contacting Wife was certainly appropriate, nothing 
 supports a finding Husband would ever harm the children. 
As in Stefan, Husband's egregious behavior in this incident was cause for great 
 concern to the family court. However, the family court could have taken other 
 action to ensure the best interests of the children were served without taking 
 the drastic measure of suspending visitation. Because the family court's order 
 is not supported by the record, we reverse the portion of the order suspending 
 Husband's visitation and remand the matter for the court to establish an appropriate 
 visitation schedule.

V. Attorney's Fees 
Husband further argues there is no evidence in the record that $250 per hour 
 is a reasonable attorney's fee for a domestic case in Aiken County. We disagree. 

Wife testified at trial that she paid her attorney $250 per hour. Wife's attorney 
 submitted an affidavit at the final hearing detailing his hourly rate and the 
 amount of time expended on the case. At the end of the final hearing, the family 
 court judge awarded Wife attorney's fees, holding:

I find from the affidavits that have been submitted that the hourly rates and 
 nature of the services, time devoted, all of which have been rendered by the 
 attorney for [Wife], and I find [Wife] has prevailed on almost every issue that 
 has been litigated here today.
I find the total fees submitted in the affidavits to be thirteen thousand five 
 hundred thirty-seven dollars and thirty-four cents, which the Court finds to 
 be extremely reasonable considering the nature and difficulty of the litigation, 
 and much of the difficulty that was encountered and incurred was because of 
 the obstinance of [Husband], including his failure to cooperate and reveal assets 
 as was ordered by the Court.
I'm going to require that [Husband] contribute twelve thousand dollars toward 
 payment of [Wife's] fees and cost, with that contribution to be paid in full 
 within sixty days.

It does not appear Husband ever objected to the hourly rate charged by Wife's 
 attorney. 
The decision to award attorney's fees is a matter within the family court's 
 discretion and will not be overturned on appeal absent an abuse of that discretion. 
 Stevenson v. Stevenson, 295 S.C. 412, 415, 368 S.E.2d 901, 903 (1988). The family 
 court should consider several factors before awarding attorney's fees, including: 
 (1) each party's ability to pay his or her own fee; (2) the beneficial results 
 obtained by the attorney; (3) the parties' respective financial conditions; 
 and (4) the effect of the attorney's fee on each party's standard of living. 
 E.D.M. v. T.A.M., 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992); see Heins 
 v. Heins, 344 S.C. 146, 543 S.E.2d 224 (Ct. App. 2001). When determining the 
 actual amount of attorney's fees to award, the court should consider: (1) the 
 nature, extent, and difficulty of the services rendered; (2) the time necessarily 
 devoted to the case; (3) counsel's professional standing; (4) the contingency 
 of compensation; (5) the beneficial results obtained; and (6) the customary 
 legal fees for similar services. Glasscock v. Glasscock, 304 S.C. 158, 161, 
 403 S.E.2d 313, 315 (1991); see Shirley v. Shirley, 342 S.C. 324, 536 S.E.2d 
 427 (Ct. App. 2000). 
Because Husband did not object to the rate charged by Wife's attorney, this 
 issue is not preserved for appellate review. See S.C. Dep't Soc. Servs. v. Basnight, 
 346 S.C. 241, 551 S.E.2d 274 (Ct. App. 2001) (matters not raised to or ruled 
 upon by the trial judge are not preserved for appellate review).
In any event, it appears from the record that the litigation between the parties 
 was complex and heavily contested. The family court considered the beneficial 
 results obtained by Wife's attorney, time devoted to the case, and the customary 
 fees charged for the service. Because the family court considered the appropriate 
 factors, including the hourly rate, we find no error in awarding Wife attorney's 
 fees. 
VI. Personal Jurisdiction
Finally, Husband complains the family court did not have jurisdiction over 
 his father, Paul Wilkinson, and that his joinder amounted to a denial of due 
 process. We disagree. Not only did the parties agree to dismiss Paul Wilkinson 
 at the commencement of the final hearing, Husband's joinder argument appears 
 without any citation to cases or other supporting authority. Therefore, because 
 Husband's argument on this issue is conclusory, we deem it abandoned and refuse 
 to address it on appeal. See First Sav. Bank v. McLean, 314 S.C. 361, 444 S.E.2d 
 513 (1994) (holding the failure to provide argument or supporting authority 
 for an issue renders it abandoned). Moreover, it does not appear Husband has 
 standing to raise this issue, as the question of Paul Wilkinson's joinder concerns 
 potential violations of his, not Husband's, rights. 
For the foregoing reasons, the family court order granting Wife attorney's 
 fees, child custody, alimony, and fifty percent of the marital estate is affirmed. 
 We also affirm the family court's valuation of the marital property and decision 
 to join Paul Wilkinson as a party to the action. However, we reverse the court's 
 inclusion of the 8% cost of sale in the valuation of the marital home, along 
 with the decision to suspend Husband's visitation rights. We therefore remand 
 the case to the family court to resolve these issues in a manner not inconsistent 
 with this opinion. 
AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
GOOLSBY, HOWARD, and SHULER, JJ., concur.