THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 South Carolina
 Department of Social Services, Respondent,
 v.
 C.B. and T.B., Appellants.
 In the Interest of:  I.B., Date of Birth
 04/23/05, a Minor Child Under the Age of 18.
 
 
 

Appeal From Lee County
 Marion D. Myers, Family Court Judge
Unpublished Opinion No. 2007-UP-430
Submitted October 1, 2007  Filed October
 9, 2007    
AFFIRMED

 
 
 
 James P. Saverance, Jr., of Bishopville, for Appellant T.B., and Charles
 Thomas Brooks, of Sumter, for Appellant C.B.
 Deborah Truett Nielsen, of Bishopville, for Respondent.
 
 
 

PER CURIAM: 
 C.B. (Mother) and T.B. (Father) appeal from a family court order terminating
 their parental rights to I.B. (Daughter).  We affirm.[1]
FACTS
Daughter is Mothers seventh child and Fathers twelfth.[2]  Mother does not have custody of any
 of her other children, and several of Fathers children have been raised by
 relatives.  
The
 Department of Social Services (DSS) became involved in this case when Mother
 tested positive for cocaine and marijuana during her third trimester of
 pregnancy with Daughter.  DSS received a report about this drug use on March
 14, 2005, and the case was indicated on April 28, 2005 for substantial risk of
 physical abuse and neglect.  Daughter was born on April 23, 2005, and she was
 placed into DSS custody on June 1, 2005.  
Both Mother and Father have long histories of drug abuse.  In
 1995, Mother gave birth to a child who tested positive for cocaine, and in
 March 2000, Mother tested positive for cocaine while she was pregnant with
 another child.  At the termination of parental rights (TPR) hearing, DSS
 presented two experts - Sam Tipton, a drug and alcohol counselor, and Dr.
 Patrick Goldsmith, a psychologist.    
Tipton diagnosed Mother as having cocaine dependence and cannabis dependence. 
 Tipton testified that, although Mother did real well in treatment initially,
 she relapsed within a week after participating in a program in 2005 at The
 Palmetto Center, an inpatient treatment facility.  Mother was tested for drugs a
 few months later in early 2006, and she again tested positive for cocaine on
 two occasions.  Mother was tested in August 2006 and when that test came back
 positive, Mother was sent to The Charleston Center, another inpatient program.  
 
Dr. Goldsmith testified he met with Mother in July 2005 and
 administered several psychological tests to her.  Based on these tests, he
 diagnosed her with cannabis dependency, cocaine dependency, and severe mental
 retardation.  He also found she had multiple stressors associated with
 addiction and mental retardation.  Mothers overall IQ was below 35, which is
 in the severe range of mental retardation.  Dr. Goldsmith opined that she will
 need assistance most of her life, and that generally is not reversible.  She
 might have some mental improvement if she would stop using drugs; but, I doubt
 . . . her sincerity in regard to that.  Dr. Goldsmith described Mothers
 addiction as being as severe as anything [hed] ever seen and explained that
 her failed drug screens while pregnant and after removal are indicative of
 severity.  
Dr. Goldsmith also met with Father during
 July 2005.  He diagnosed Father with schizophrenia, dementia due to alcoholism,
 and as having severe stressors due to his complicated psychiatric problems and
 marital difficulties.  Dr. Goldsmith noted Fathers addiction to alcohol was in
 remission, but that he suffered permanent damage from his previous alcohol
 abuse.  He stated Father reads at a second-grade level and cannot remember
 three items after five minutes.  Dr. Goldsmith also noted Father was on disability
 and had a guardian appointed to handle his disability fund.    
Melissa Robinson, the foster care worker for Daughter, also
 testified at the TPR hearing.  Robinson acknowledged that both Mother and Father
 consistently visited Daughter and brought her clothes or other items when they
 came to visit.  Robinson stated that, although DSS currently had no prospective
 adoptive parents for Daughter, she was doing great in her foster home. 
 Robinson testified Mother did not complete her treatment plan, but Father had essentially
 done everything DSS had asked of him.  Despite Fathers compliance with the
 treatment plan, however, Robinson did not believe Father was able to care for
 Daughter by himself, nor did she know of any relatives who could help care for
 the child.  Robinson noted that DSS performed a home study on one of Fathers
 sisters, but DSS declined to place Daughter with the sister because she had
 been convicted of criminal domestic violence.  
The guardian ad litem filed a report with the family court
 recommending the termination of both Mothers and Fathers parental rights.  In
 the report, the guardian noted she would rather see Daughter placed with a
 relative who knew the childs limitations, but the only relative who wanted the
 child was not acceptable to DSS because of her prior conviction.  At the TPR
 hearing, the guardian expressed her reluctance to terminate Fathers parental
 rights, but ultimately stood by the recommendation in her report.  
The family court found Mother had a diagnosable condition that was
 unlikely to change within a reasonable time; she failed to remedy conditions
 leading to Daughters removal; and, due to the severity and repetition of
 Mothers abuse and neglect, it was unlikely her home could be made safe within
 the next twelve months.  With regard to Father, the family court found he had a
 diagnosable condition that was unlikely to change within a reasonable time and
 that, because of the diagnosable condition, he had failed to remedy conditions
 leading to Daughters removal.  The family court further found termination of
 Mothers and Fathers parental rights was in Daughters best interest.  Mother
 and Father have filed separate appeals.
STANDARD OF
 REVIEW
In a TPR action, the best interest of the child is the paramount consideration.  Doe
 v. Baby Boy Roe, 353 S.C. 576, 578 S.E.2d 733 (Ct. App. 2003).  Before
 parental rights may be irrevocably terminated, the State must prove the alleged
 grounds for termination by clear and convincing evidence.  Richberg v.
 Dawson, 278 S.C. 356, 296 S.E.2d 338 (1982); South Carolina Dept
 of Soc. Servs. V. Parker, 336 S.C. 248, 519 S.E.2d 351 (Ct. App. 1999).  
 
On appeal in a TPR action, an appellate court has the authority to
 review the entire record to make its own factual findings and to determine whether
 the grounds for termination are supported by clear and convincing evidence.  South Carolina Dept of Soc. Servs. v. Cummings, 345 S.C. 288, 547 S.E.2d 506
 (Ct. App. 2001).  This broad scope of review, however, does not require the
 appellate court to disregard the findings of the family court, which was in a
 better position to evaluate the credibility of the witnesses and to assign comparative
 weight to their testimony.  Hardy v. Gunter, 353 S.C. 128, 577 S.E.2d
 231 (Ct. App. 2003).  
LAW/ANALYSIS
I.  Expert
 Testimony
Mother initially argues the family court erred in qualifying Sam
 Tipton as an expert witness and in attaching any weight to his testimony.  We
 disagree.
To qualify as an expert, a person must have acquired by study or
 practical experience a special knowledge of a subject matter about which the
 [fact-finders] good judgment and average knowledge is inadequate.  Manning
 v. City of Columbia, 297 S.C. 451, 453-54, 377 S.E.2d 335, 337 (1989).  The
 qualification of expert witnesses and the admissibility of their opinions are
 matters resting within the sound discretion of the trial court.  Id. at 453, 377 S.E.2d at 336-37.  On appeal, we will not disturb the trial courts
 ruling in the absence of an abuse of that discretion and a showing of
 prejudice.  Strange v. South Carolina Dept of Hwys. & Pub. Transp.,
 307 S.C. 161, 414 S.E.2d 138 (1992).
Before being qualified as an expert in addiction counseling,
 Tipton testified that he had been employed as a drug and alcohol abuse
 counselor for approximately seven years.  To become a counselor, Tipton had to
 complete four years of college and receive certification from the State. 
 Although Tipton does not regularly testify in court, he was qualified as an
 expert in another court proceeding several years prior to the TPR hearing in
 this case.  Based on Tiptons experience, education, and training, we find the
 family court did not abuse its discretion in qualifying Tipton as an expert in
 addiction counseling.
II. Grounds
 for Termination
Next, both Mother and Father appeal from the family courts
 finding that grounds exist to terminate their parental rights.  Addressing
 Mothers arguments first, she contends the record does not contain clear and
 convincing evidence that she has a diagnosable condition that is unlikely to
 change within a reasonable time.  We disagree.
Section 20-7-1572(6) of the South Carolina Code provides in
 relevant part as follows:

 It is presumed that the parents condition is unlikely to change
 within a reasonable time upon proof that the parent has been required by the
 department or the family court to participate in a treatment program for
 alcohol or drug addiction, and the parent has failed two or more times to
 complete the program successfully or has refused at two or more separate
 meetings with the department to participate in a treatment program[.]

S.C. Code Ann. §
 20-7-1572(6) (Supp. 2006).
Here,
 Mother received inpatient treatment at The Palmetto Center, and she relapsed within
 a week of being released to after-care services.  Mother continued to test
 positive for cocaine until August 18, 2006, two months prior to the TPR
 hearing.  DSS again referred Mother for inpatient treatment, which was supposed
 to last for three months, but Mother was discharged with a month.[3]  On October 6, 2006, just days before
 the TPR hearing, Mother missed her scheduled appointment at another drug
 rehabilitation center.  
In addition to the failed treatments during the pendency of this
 action, Mother has a long history of abusing drugs and being unable to overcome
 her addiction, even while pregnant or facing the termination of her parental
 rights.  DSS presented evidence that Mother used cocaine during two previous pregnancies. 
 Accordingly, we find no error in the family courts determination that Mother
 has a diagnosable condition that is unlikely to change within a reasonable
 time.[4]
Likewise, Father contends the family court erred in finding he had
 a diagnosable condition unlikely to change within a reasonable time.  Specifically,
 he argues he has the mental capacity and ability to provide minimally
 acceptable care for Daughter.  We disagree.
According to testimony presented at the TPR hearing, Father has a
 full- scale IQ of 50.  Dr. Goldsmith testified Father reads at a second-grade
 level and could not remember a list of three items after five minutes.  In
 addition to these problems, Father has been diagnosed with schizophrenia and
 dementia due to alcoholism.  
Father is to be commended for complying with his treatment plan;
 however, his intellectual functioning is unfortunately so impaired that neither
 Dr. Goldsmith nor Melissa Robinson, the foster care worker, believed Father
 could parent Daughter.  Although the guardian initially expressed feeling
 conflicted about recommending the termination of Fathers parental rights,
 the family court, which actually saw and heard Father testify at the hearing,
 found the evidence overwhelmingly clear and convincing and stated it had no
 doubt . . . that neither of [Daughters] two biological parents . . . are fit
 and proper individuals to have custody of [Daughter].  See Dorchester County Dept of Soc. Servs. v. Miller, 324 S.C. 445, 477 S.E.2d
 476 (Ct. App. 1996) (explaining that despite the appellate courts broad scope
 of review, it should remain cognizant that the family court had the advantage
 of seeing and hearing the witnesses before making findings of fact).  We find
 clear and convincing evidence was presented to prove Father suffers from a
 diagnosable condition that is unlikely to change within a reasonable time.
II. Best
 Interest
Finally,
 Mother and Father argue terminating their parental rights would not serve
 Daughters best interest.  We disagree.
At the
 time of the TPR hearing, Daughter was eighteen months old, and she had been in
 foster care for all but one month of her life.  Although Mother and Father
 visited frequently, the guardian testified that any harm to Daughter if her
 biological parents rights were terminated would be short-term as children rebound
 very quickly.  Furthermore, there was evidence Daughter was doing well in
 foster care, and at least one potential adoptive family became disinterested
 upon learning Daughter was not yet free for adoption.  Considering Daughters
 young age and the improbability that either Mother or Father would ever be able
 to care for her, we agree a long-term plan of adoption is in Daughters best
 interest.
CONCLUSION
Based
 on the foregoing, the order of the family court terminating Mothers and
 Fathers parental rights is
AFFIRMED.
HEARN, C.J., and HUFF and KITTREDGE, JJ., concur.

[1]  We decide this case without oral argument pursuant
 to Rule 215, SCACR.
[2]  At the time of the hearing in this matter, Mother
 was pregnant again.  
[3]  It is unclear from the record why Mother was
 discharged, but Mother offered no proof that she had successfully completed the
 program.
[4]  Having found this statutory ground established by
 clear and convincing evidence, we need not address the remaining grounds relied
 upon by the family court.