547 S.E.2d 506

### SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Respondent,

v.

### Paula CUMMINGS, John Doe, and Christopher Cummings, Defendants.

### In the Interest of Alexia Nickola Bruce, DOB: 9/22/97: A Minor Child Under the Age of 18 years,

### of whom Paula Cummings is the Appellant.

No. 3336.

Court of Appeals of South Carolina.

Submitted Feb. 22, 2001.

Decided April 30, 2001.

Rehearing Denied July 2, 2001.

290

William Isaac Diggs, of Myrtle Beach, for appellant.

Charles E. Parrish, of the South Carolina Department of Social Services, of Conway, for respondent.

Guardian ad Litem: George M. Hearn, Jr., of Hearn, Brittain & Martin, of Conway.

ANDERSON, Judge:

The Family Court terminated the parental rights of Paula Cummings. We affirm.[1]

### FACTS/PROCEDURAL BACKGROUND

Paula Cummings gave birth to a daughter, Alexia Nickola Bruce. Paula and the baby tested positive for cocaine while in the hospital. Though grounds for removal, the Family Court permitted the baby to remain with Paula because there was an adult in Paula's home, Terry Bruce, who was willing to assume the role of father and initially appeared suited to help care for Alexia. The Department created a treatment plan for the

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

family, which required Paula and Terry to: participate in alcohol and drug assessment; follow the recommendations given to them during this assessment; undergo random drug screenings; take parenting skills classes; and submit to supervised visitation.

Within two months of Alexia's birth, Terry tested positive for drugs. The Department removed Alexia from the home and placed the child in foster care.

Soon after, the Family Court held a judicial review hearing. The court ordered Paula and Terry to complete their treatment plan. Additionally, the judge mandated the couple to each pay $15.00 a week in child support.

Seven months later, the Department sought termination of Paula's parental rights. The Department alleged, *inter alia,* Paula continued to abuse cocaine and had wilfully failed to pay child support. Citing these grounds and the best interests of Alexia, the Family Court found by clear and convincing evidence that termination of Paula's rights was warranted. Paula sought post-trial relief fashioned as a "Motion for Relief from Judgment by Defendant Paula Cummings/To Stay the Final Order and To Enjoin Any Adoption of the Minor Child Pending this Action." Paula's motion was denied.

## *ISSUES*

I.   Did the Family Court err by concluding termination of Paula's parental rights was warranted upon the grounds of § 20–7–1572(2)?

II.  Did the Family Court err by concluding termination of Paula's parental rights was warranted upon the grounds of § 20–7–1572(4)?

III. Did the Family Court err by concluding termination of Paula's parental rights was warranted upon the grounds of § 20–7–1572(1)?

IV.  Did the Family Court err by concluding Paula had "conflict-free" representation for the TPR proceedings?

V.   Did the Family Court err by concluding termination of Paula's parental rights was in the best interests of her child?

## STANDARD OF REVIEW

■ Grounds for termination of parental rights must be proved by clear and convincing evidence. *Hooper v. Rockwell,* 334 S.C. 281, 513 S.E.2d 358 (1999); *see also Santosky v. Kramer,* 455 U.S. 745, 747–48, 102 S.Ct. 1388, 1391–92, 71 L.Ed.2d 599 (1982), *cited in South Carolina Dep't of Soc. Servs. v. Broome,* 307 S.C. 48, 52, 413 S.E.2d 835, 838 (1992) (The United States Supreme Court held: "Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence.").

■ In a termination of parental rights case, the appellate court has jurisdiction to examine the entire record to determine the facts according to its view of the evidence. *Richland County Dep't of Soc. Servs. v. Earles,* 330 S.C. 24, 496 S.E.2d 864 (1998). This Court may review the record and make its own findings whether clear and convincing evidence supports termination. *South Carolina Dep't of Soc. Servs. v. Parker,* 336 S.C. 248, 519 S.E.2d 351 (Ct.App.1999). Our broad scope of review does not require us to disregard the findings below or ignore the fact the trial judge was in a better position to assess the credibility of the witnesses. *Dorchester County Dep't of Soc. Servs. v. Miller,* 324 S.C. 445, 477 S.E.2d 476 (Ct.App.1996), *cited in* Jean Hoefer Toal *et al., Appellate Practice in South Carolina* 187 (1999).

## LAW/ANALYSIS

Section 20–7–1572 provides for termination of parental rights:

The family court may order the termination of parental rights upon a finding of one or more of the following grounds and a finding that termination is in the best interest of the child:

. . . .

(2) The child has been removed from the parent pursuant to Section 20–7–610 or Section 20–7–736, has been out of the home for a period of six months following the adoption of a placement plan by court order or by agreement between the

department and the parent, and the parent has not remedied the conditions which caused the removal;

. . . .

(4) The child has lived outside the home of either parent for a period of six months, and during that time the parent has wilfully failed to support the child. Failure to support means that the parent has failed to make a material contribution to the child's care. A material contribution consists of either financial contributions according to the parent's means or contributions of food, clothing, shelter, or other necessities for the care of the child according to the parent's means. The court may consider all relevant circumstances in determining whether or not the parent has wilfully failed to support the child, including requests for support by the custodian and the ability of the parent to provide support;

. . . .

### I. Section 20–7–1572(2): Paula's Failure to Correct Conditions that Warranted Alexia's Initial Removal

■ An "abused" or "neglected" child may be removed from the home pursuant to §§ 20–7–610 or –736. An "abused" or "neglected" child is, *inter alia*, a child whose physical or mental welfare is harmed or threatened with harm by the acts or omissions of the child's parent. S.C.Code Ann. § 20–7–490(2) (Supp.1998). The legal presumption exists that a newborn child is "abused" or "neglected" upon proof that a blood or urine test of either the mother or child shows the presence of a controlled substance such as cocaine. S.C.Code Ann. 20–7–736(G)(3) (Supp.1998). This presumption may be overcome by proof that the father or other adult who will assume the role of father is available and suitable to provide care for the child in the mother's home. S.C.Code Ann. 20–7–736(G) (Supp.1998).

Paula tested positive for cocaine when Alexia was born. Terry was willing to assume the role of father and help Paula care for her daughter.[2] Because of Terry's presence, the

---

**2.** Paula and Terry were living together when Alexia was born. Paula believed Terry to be Alexia's birth father. A subsequent blood test

Family Court did not order Alexia's removal and instead let her go home with Terry and Paula. This was a second chance for the couple. Nevertheless, Terry was found to be using cocaine within two months of Alexia's birth. The presumption that Alexia was not an "abused" or "neglected" child was consequently destroyed.

In the following months, the Department worked earnestly to help Paula overcome her use of cocaine. Paula, however, did not reciprocate with diligent efforts of her own. The evidence presented by the Department showed she had enrolled in five different drug abuse counseling courses, but failed to complete even one. Further, she tested positive for cocaine use on three occasions and either refused or did not make herself available for drug screenings seven other times.

Paula admitted using cocaine shortly before the child's birth. She did not complete the court-ordered drug counseling and treatment. The Department provided clear and convincing evidence that Paula failed to remedy the cause for Alexia's removal. The Family Court did not err in approving termination upon this ground. *See South Carolina Dep't of Soc. Servs. v. Broome*, 307 S.C. 48, 52, 413 S.E.2d 835, 838 (1992) ("We cannot condone appellant's failure to seek available treatment by allowing her to seek refuge in the existence of a condition which likely would have been remedied had she complied with the order of the court.").

## II. Section 20–7–1572(4): Paula's Wilful Failure to Support

■ In its Judicial Review Order, the Family Court mandated:

AND IT IS FURTHER ORDERED that *Paula Cummings* shall pay child support in the amount of $15.00 weekly, plus 3% court costs, for a total of $15.45 weekly. These payments are to begin March 27, 1998 and each Friday thereafter, and are to be paid through the Horry County Clerk of Court, Support Division.

(emphasis added).

Almost fourteen months separated the judicial review order and TPR hearing. During that time, Paula paid support on

---

revealed Terry was not the birth father. He was not a defendant when the TPR proceedings were held.

only one occasion. At the TPR hearing, Paula claimed she did not pay because she was confused:

> See, at first, when they told us we had to pay it in court, I thought they were talking about Terry had to pay it, 'cause when I called the child support office, they did not have my name down, and that's when I called DSS and they said that I was suppose to pay, too, because they didn't have my— they didn't have my name down at first at the child support office.
>
> They just had Terry [Bruce's] down to pay child support.

■ Paula had notice about her weekly child support obligation in the form of the court's written order issued after the judicial review hearing—there is no evidence in the record showing Paula was not sent a copy of the order. Notwithstanding this, nothing in § 20-7-1572(4), requires a parent be "notified" of her duty to support her child before failure to discharge this duty may serve as grounds for termination of parental rights. *South Carolina Dep't of Soc. Srvs. v. Parker,* 336 S.C. 248, 519 S.E.2d 351 (Ct.App.1999).

Paula owed $490 in child support by the date of the TPR hearing. On that day, she paid $457 to the court. Paula avers this payment demonstrates her willingness to support Alexia. We disagree.

■ A parent's earlier failure to support may be cured by the parent's subsequent repentant conduct. *See Abercrombie v. LaBoon,* 290 S.C. 35, 348 S.E.2d 170 (1986). Once conduct constituting a failure to support is shown to have existed, the court must then determine whether the parent's subsequent conduct was of a sufficient nature to be curative. *See id.* A parent's curative conduct after the initiation of TPR proceedings may be considered by the court on the issue of intent; however, it must be considered in light of the timeliness in which it occurred. *Id.* Rarely does judicially-motivated repentance, standing alone, warrant a finding of curative conduct. *Id.* It must be considered together with all the relevant facts and circumstances. *Id.*

In the instant case, Paula was under a court order to pay a nominal amount in weekly child support. Despite this order, Paula paid only one installment in thirteen months. Paula

provided no reasonable excuse at the TPR proceedings for her failure to support. Therefore, the Family Court was correct in concluding that Paula's conduct was a manifestation of her conscious indifference to Alexia's rights to receive support. In other words, Paula's failure to support was "wilful." We affirm the Family Court's ruling on this issue.

## III. Section 20–7–1572(1): Existence of Harm

In its TPR petition, the Department pled termination was warranted pursuant to § 20–7–1572(1). The Family Court did not make a finding on this ground in its written order. The Department did not request a ruling during post-trial proceedings. The issue was therefore not preserved. Thus, this Court need not address Paula's third exception: "The lower court committed error when it terminated Appellant's parental rights in reliance on S.C.Code Ann. 20–7–1572(1), when Respondent failed to carry its burden of proof on this ground."

## IV. Conflict of Interest Claim

Paula contends she was unduly prejudiced by her TPR attorney's dual representation of her and the other defendants.

A TPR respondent is guaranteed the assistance of counsel. S.C.Code Ann. § 20–7–110(2) (Supp.1998). Where counsel is guaranteed, the client also has the right to conflict-free representation. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Violation of this principle is grounds for reversal. *Id.*

Unless the defendant demonstrates her counsel actively represented conflicting interests, she has not established the constitutional predicate for a claim of ineffective assistance of counsel arising from multiple representation. *Id.* In this case, Paula's counsel apparently also initially represented Terry. By the time the hearing was held, Terry was no longer a named defendant. The other defendants, Christopher Cummings[3] and John Doe,[4] did not appear and were adjudged to be in default. Therefore, the only person represented by

---

3. Paula's husband at the time Alexia was born.

4. The unidentified birth father.

Paula's counsel was Paula. The transcript shows Paula's counsel zealously represented Paula's interests throughout the proceedings. This Court finds counsel's representation of Paula was not affected by any conflict of interest.

### V. Best Interests of Alexia

In her post-trial motion, Paula argued termination was not warranted because, *inter alia:* she had substantially complied with all court-ordered mandates and completed at least two drug-abuse recovery programs; she was neither a heavy nor habitual cocaine user; and she had a "strong and close knit" extended family who were "completely supportive of her and her daughter" and "willing to continue to help her in terms of assisting her with establishing and providing a suitable home for the child." While these contentions are compelling on their face, Paula's history of relapse and demonstrated failure to financially support Alexia weigh heavily against reuniting mother and child. The best interests of the child are paramount when adjudicating a TPR case. *South Carolina Dep't of Soc. Servs. v. Parker,* 336 S.C. 248, 519 S.E.2d 351 (Ct.App.1999). In the instant action, Alexia's best interests lie with placement in a family setting devoid of drugs and uncertainty.

### CONCLUSION

We recognize the importance of the "deferential reliance" principle in regard to Family Court judges and the decision-making realm of "credibility." In the case *sub judice,* the Family Court judge analyzed the facts and relevant precedent with specificity. This Court defers to his findings. *See South Carolina Dep't of Soc. Servs. v. Smith,* 343 S.C. 129, 134, 538 S.E.2d 285, 287 (Ct.App.2000) (quoting *Aiken County Dep't of Soc. Servs. v. Wilcox,* 304 S.C. 90, 93, 403 S.E.2d 142, 144 (Ct.App.1991)) ("[W]here the evidence presented in the record adequately supports the findings of the trial judge, due deference should be given to his judgment based on his superior position in weighing such evidence. This is especially true in cases involving the welfare and best interests of children."). We affirm the order of the Family Court in its entirety.

**AFFIRMED.**

GOOLSBY and STILWELL, JJ., concur.