THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
BE CITED OR RELIED ON AS PRECEDENT 
 IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 239(d)(2), 
 SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Gerald T. Hatcher and Martha Jean
Hatcher,        Appellants,
 
 
 

v.

 
 
 
Tammy S. Hornsby Moore, and Skylar
Hatcher, a minor under the age of 
 fourteen (14) years,        Respondents.
 
 
 

Appeal From Aiken County
Peter R. Nuessle, Family Court Judge

Unpublished Opinion No. 2004-UP-332
Submitted May 12, 2004  Filed May 17, 
 2004

AFFIRMED

 
 
 
Thomas P. Murphy, of N. Augusta, for Appellants.
Amanda Frances Whittle, of Aiken, for Respondents.
 
 
 

PER CURIAM:  In this termination of parental 
 rights case, Gerald T. Hatcher and Martha Jean Hatcher appeal from an order 
 of the family court denying their complaint to terminate the parental rights 
 of Tammy S. Hornsby Moore to her minor son, Skylar Hatcher.  We affirm.
FACTS
Tammy Moore is the mother of Skylar Hatcher, 
 born January 13, 1997.  Skylar lived with his mother in Aiken County until he 
 was about one and a half years old.  Then, in June 1998, Moore asked the Hatchers, 
 Skylars paternal grandparents, to care for Skylar.  Immediately after placing 
 Skylar with the Hatchers, Moore was arrested for failing to appear in court 
 on a matter unrelated to the instant case.  
After her June 1998 arrest, Moores contact with 
 and support for her son was limited.  At Moores request, the Hatchers retained 
 primary physical custody of Skylar.  Shortly after her arrest, Moore sent the 
 Hatchers a personal check for fifty dollars.  A few weeks later, Mike Hornsby, 
 a friend of Moores and the father of her other child, sent an additional check 
 for fifty dollars to the Hatchers for Skylars support.  
In August 1998, Moore was involved in a serious 
 car accident in which the passenger in the car she was driving was killed.  
 Moore was charged with and pled guilty to involuntary manslaughter and was ultimately 
 sentenced to five years imprisonment.  
After the accident, Moore was admitted to a drug 
 treatment facility as mandated by a previous court order.  She was released 
 approximately one month later.  Following her release, Moore moved to  Seneca, 
 South Carolina, to live with her parents.    
Moore testified she would occasionally visit Skylar 
 during the following months by sneaking up to see him with the help of Skylars 
 father, Trent Hatcher.  Moore also claimed she left Christmas presents for Skylar 
 at the Hatchers home in December 1998.  She returned to Aiken full-time in 
 July 1999 and lived with Trent in a trailer adjacent to the Hatchers home.  
 Moore moved out approximately one month later.   Throughout this time, Moore 
 testified she was unemployed and unable to provide any additional financial 
 support for Skylar.  
Moore last saw Skylar on October 31, 1999.  The 
 next day she began serving her five-year prison sentence for the August 1998 
 involuntary manslaughter conviction.  
While she was in prison, Moore attempted to maintain 
 involvement with Skylar and the Hatchers.  Though she earned no money in prison, 
 she sent letters and holiday cards to Skylar along with letters to the Hatchers 
 asking how her son was doing and thanking them for their help raising Skylar 
 while she was away.  Moore also requested that the Hatchers bring Skylar to 
 visit her in prison.  They refused to do so.  
The Hatchers brought this action in May 2000, seeking 
 to terminate Moores parental rights to Skylar, alleging she had willfully failed 
 to visit or support Skylar during the time the child had been in their custody.  
 The family court denied the Hatchers request, finding they failed to establish 
 sufficient grounds to terminate Moores parental rights. 
STANDARD OF REVIEW
Grounds for termination of parental rights 
 must be proved by clear and convincing evidence.  Hooper v. Rockwell, 
 334 S.C. 281, 297, 513 S.E.2d 358, 366 (1999).  On appeal of a termination of 
 parental rights case, this court may review the entire record to make a determination 
 of the facts according to our view of the evidence.  Richland County Dept 
 of Soc. Servs. v. Earles, 330 S.C. 24, 32, 496 S.E.2d 864, 868 (1998). Our 
 broad scope of review, however, does not require us to disregard the findings 
 of the family court below or ignore the fact the trial judge was in a better 
 position to assess the credibility of the witnesses.  South Carolina Dept 
 of Soc. Servs. v. Cummings, 345 S.C. 288, 293, 547 S.E.2d 506, 509 (Ct. 
 App. 2001). 
DISCUSSION
The Hatchers argue the family court erred 
 in denying their request to terminate Moores parental rights to Skylar, because 
 they assert the evidence clearly demonstrates Moore failed to support and visit 
 Skylar.  We disagree.
Termination of parental rights is governed 
 by South Carolina Code section 20-7-1572 (Supp. 2003).  This statute provides 
 that the family court may order the termination of parental rights upon a finding 
 of one or more of the enumerated grounds.   In this case, the Hatchers sought 
 to terminate Moores parental rights to Skylar pursuant to subsections (3) and 
 (4) of the statute, which provide for termination if:

(3) The child has lived outside 
 the home of either parent for a period of six months, and during that time the 
 parent has wilfully failed to visit the child. The court may attach little 
 or no weight to incidental visitations, but it must be shown that the parent 
 was not prevented from visiting by the party having custody or by court order.  
 The distance of the childs placement from the parents home must be taken into 
 consideration when determining the ability to visit;
(4) The child has lived outside 
 the home of either parent for a period of six months, and during that time the 
 parent has wilfully failed to support the child.  Failure to support 
 means that the parent has failed to make a material contribution to the childs 
 care.  A material contribution consists of either financial contributions according 
 to the parents means or contributions of food, clothing, shelter, or other 
 necessities for the care of the child according to the parents means.  The 
 court may consider all relevant circumstances in determining whether or not 
 the parent has wilfully failed to support the child, including requests for 
 support by the custodian and the ability of the parent to provide support; 

S.C. Code Ann. § 20-7-1752(3) & (4) (Supp. 2003) 
 (emphasis added).
Whether a parents failure to visit or 
 support a child is willful under section 20-7-1752 is a question of intent to 
 be determined by the facts and circumstances of each case.  South Carolina 
 Dept of Soc. Servs. v. Headden, 354 S.C. 602, 610, 582 S.E.2d 419, 423 
 (2003).  Our supreme court has held [c]onduct of the parent which evinces a 
 settled purpose to forego parental duties may fairly be characterized as willful 
 because it manifests a conscious indifference to the rights of the child to 
 receive support and consortium from the parent.  South Carolina Dept of 
 Soc. Servs. v. Broome, 307 S.C. 48, 53, 413 S.E.2d 835, 839 (1992).  The 
 element of willfulness must be established by clear and convincing evidence.  
 Id. at 52, 413 S.E.2d at 838.
Based on our review of the record, we 
 do not find there is clear and convincing evidence to show Moore willfully failed 
 to visit or support Skylar.  Moores testimony, which we find largely credible, 
 reveals she made numerous attempts to visit Skylar prior to her incarceration, 
 doing so discreetly when she felt she would not be welcome in the Hatchers 
 home. We also note the period of time Moore lived adjacent to the Hatchers in 
 the summer of 1999.  Moores credible testimony indicates she took advantage 
 of that opportunity to spend time with Skylar.  Moores imprisonment did not 
 end her desire to see her son.  The Hatchers admitted that Moore asked them, 
 on more than one occasion, to bring Skylar to the prison for a visit.  The Hatchers 
 refused these requests.  It was also admitted that Moore tried to maintain contact 
 and involvement with Skylar from prison by way of regular cards and letters 
 to Skylar and the Hatchers.
On the question of Moores support for 
 Skylar, we find her lack of support in this case does not rise to the level 
 warranting termination of parental rights.  To be sure, Moore provided very 
 little in the form of pure financial support.  We cannot say, however, that 
 Moore evidenced a desire to completely forgo her duty to support Skylar.  The 
 gifts she provided Skylar, along with the time spent with Skylar in summer 1999, 
 indicate some commitment on the part of Moore to contribute to Skylars care.  

We are additionally mindful of the instruction 
 in section 20-7-1572(4) that the court must evaluate the support Moore provided 
 according to her means.  As noted above, Moore was unemployed in the year prior 
 to her imprisonment.  Though she had received some money from the sale of real 
 estate, Moore testified that a substantial portion of this money had to be used 
 to pay off an existing debt.  While in prison, Moore earned no money.  We, like 
 the family court judge, afford greater weight to the contributions Moore did 
 make to the care of Skylar in light of her very limited financial means.   
In reaching this decision, we do not intend to 
 gloss over the plain fact that Moores poor decisions in her life have had a 
 negative impact on her ability to meet her obligations as a parent to Skylar.  
 Poor decisions, however, do not necessarily signal an intent to forgo all parental 
 rights:

The fundamental liberty interest 
 of natural parents in the care, custody, and management of their child does 
 not evaporate simply because they have not been model parents or have lost temporary 
 custody of their child to the State.  Even when blood relationships are strained, 
 parents retain a vital interest in preventing the irretrievable destruction 
 of their family life.

Santosky v. Kramer, 455 U.S. 745, 753 (1982) 
 (Stevens, J., dissenting).
Moore does not claim she has been a model parent.  
 The record reveals she has acknowledged her mistakes, and she has consistently 
 expressed appreciation for the Hatchers important role in raising Skylar.  
 In our firm judgment, Moores efforts to maintain involvement in Skylars life 
 before and after her incarceration, though far from ideal, warrant a finding 
 that she has not evinced a settled purpose to forgo her parental duties.  
Overall, we concur with the family courts determination 
 that the Hatchers have not established by clear and convincing evidence that 
 Moore wilfully failed to visit and support Skylar under the standard of section 
 20-7-1752.  The order of the family court denying the Hatchers complaint for 
 termination of Moores parental rights is therefore
AFFIRMED.      
ANDERSON, HUFF, and KITTREDGE, JJ., concur.