THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Scott B. and Andrea M., Respondents/Appellants,
v.
Melissa M., Everett H., and D. and G., minors, under the age of seven (7) years,
Defendants,
Of whom Melissa M. is Appellant/Respondent.
 
 
 

Appeal From Spartanburg County
 Wesley L. Brown, Family Court Judge

Unpublished Opinion No. 2007-UP-109
Submitted March 1, 2007  Filed March 6, 2007

AFFIRMED IN PART AND VACATED IN PART

 
 
 
Joseph K. Maddox, Jr. and Richard H. Rhodes, both of Spartanburg, for Appellant/Respondent.
James Fletcher Thompson, of Spartanburg, for Respondents/Appellants.
 
 
 

PER CURIAM:  The family court terminated Melissa M.s (Mother) parental rights (TPR) to the two minor children, D. and G., based on two statutory grounds: (1) Mother willfully failed to provide support for the minor children, and (2) Mother had a diagnosable mental condition, unlikely to change within a reasonable time, that prevented Mother from providing minimally acceptable care for the minor children.  The family court further determined that termination of Mothers parental rights was in the childrens best interest. We affirm.[1]
Additionally, the family court ordered Andrea M. (Andrea) and Scott B. (Scott) to pay Mothers attorneys fees.  Andrea and Scott argue the family court was without statutory authority to award attorneys fees in this case.  We agree and vacate that part of the family courts order. 
FACTS
Mother and Lee H. had two children during the course of an off and on relationship that began in 1999.  D. was born on September 20, 2000 and G. was born on June 18, 2002.  H. left Mother in January of 2000 and was not heard from until October of that year.  Mother and H. resumed living together in the spring of 2001 but their relationship deteriorated.  On May 15, 2001, Mother was admitted to the hospital after she overdosed on drugs and cut her wrists.  Following this first suicide attempt Andrea, Mothers sister, began helping care for D.  In July, 2001, Mother and H. resumed their relationship. 
Mother had been a reservist with the Air Force for approximately four years when terrorist attacks occurred in New York City on September 11, 2001.  Subsequently, she volunteered for a thirty-day tour in Charleston that actually turned out to be a sixty-day tour.  Ultimately her assignment evolved into a one-year tour of active duty in Charleston.  H. cared for D. while Mother was on duty until November 2001.  However, when Mother discovered H. had been using marijuana, cocaine, and methamphetamines, she made H. leave the home.  Thereafter, Andrea and her mother helped care for D. in H.s absence.  In October of 2001, Mother learned she was pregnant.  Subsequently, Mother attempted to reconcile with H. a number of times without success.  Her last contact with H. was in September of 2005.  Between October 2001 and October 2002, Andrea and Scott took care of D. for most of the time while Mother was in Charleston.  
After G.s birth on June 18, 2002, Mother experienced postpartum depression.  In June of 2003, at a birthday party for G., Mother slurred her words and fell out of a chair.  On that same occasion, Andrea noticed D. had bruises on his face.  After talking with D. about the bruises Andrea became concerned about his safety.  In February and July of 2004, Mother was hospitalized again for suicide attempts by overdose.  Mother left a note to her parents before the July 2004 suicide attempt, stating, Andrea and Scott will make excellent parents, they can provide a life for those children I never could.  The record indicates multiple hospitalizations for suicide ideation, depression, and drug abuse during 2003 and 2004.   
During 2003, Andrea and Scott and Mothers parents assisted in caring for the children.  By 2004, Andrea and Scott took care of D. frequently.  In addition, Andrea often interacted with G. at Mothers residence when she picked D. up or returned him home.  In February of 2004, Andrea delivered D. to Mothers house and discovered the home was a disaster area. The disarray of the home and Mothers lethargic condition caused Andrea concern about Mothers ability to take care of D.  Andrea brought D. back to her house, where he remained for the following week.  
Following an emergency hearing on August 26, 2004, the family court awarded temporary custody of D. and G. to Andrea and Scott by order dated October 18, 2004.  Mother testified she did not provide any financial support for her children during the first eleven months they were in Andrea and Scotts custody.  She explained Andrea never asked for any support.  Mother began making fairly regular support payments in July 2005.  Additionally, she made approximately six $16 payments to D. and G.s daycare center.  In the event she won custody of the children, Mother testified she would probably temporarily go back on food stamps.  
Andrea and Scott married on July 7, 2005, after being together fifteen years.  Andrea testified we felt like we needed to make our commitment to one another legal so we could make the commitment to the children together.  Scott had developed a strong relationship with the children.  He earned approximately $140,000 in 2005 and Andrea earned approximately $35,000.  By order dated August 9, 2005, the family court terminated Mothers parental rights and awarded her attorneys fees. 
STANDARD OF REVIEW
In a TPR case, the best interest of the child is paramount.  Doe v. Baby Boy Roe, 353 S.C. 576, 579, 578 S.E.2d 733, 735 (Ct. App. 2003).  Before forever terminating parental rights, the alleged grounds for termination must be proven by clear and convincing evidence.  Richberg v. Dawson, 278 S.C. 356, 357, 296 S.E.2d 338, 339 (1982); S.C. Dept of Soc. Servs. v. Parker, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999).  On appeal, this court may review the record and make its own determination whether the termination grounds are supported by clear and convincing evidence. S.C. Dept of Soc. Servs. v. Cummings, 345 S.C. 288, 293, 547 S.E.2d 506, 509 (Ct. App. 2001). Despite the broad scope of review, this court should not wholly disregard the family court findings because the family court is in a better position to evaluate the credibility of the witnesses and assign weight to their testimony. Dorchester County Dept of Soc. Servs. v. Miller, 324 S.C. 445, 452, 477 S.E.2d 476, 480 (Ct. App. 1996).
DISCUSSION
I.  Failure to Support
Section 20-7-1572 of the South Carolina Code (Supp. 2005), provides that the family court may terminate parental rights based on one or more of the eleven listed statutory grounds and on the finding that termination is in the best interest of the child.  The family court identified section 20-7-1572(4) as one of the grounds for termination of Mothers parental rights.  Section 20-7-1572(4) provides for TPR if:

the child has lived outside the home of either parent for a period of six months, and during that time the parent has wilfully failed to support the child.  Failure to support means that the parent has failed to make a material contribution to the child's care.  A material contribution consists of either financial contributions according to the parents means or contributions of food, clothing, shelter, or other necessities for the care of the child according to the parent's means.  The court may consider all relevant circumstances in determining whether or not the parent has wilfully failed to support the child, including requests for support by the custodian and the ability of the parent to provide support

The record contains ample evidence that the children were with Andrea and Scott for eleven months and Mother made no financial contributions to their support during that time.  The family court found Mother had a history of putting her own needs ahead of her childrens and Mothers payment of child support in July 2005 was judicially motivated.  The family court did not err in terminating Mothers parental rights for failure to support.
II.  Diagnosable Condition 
As an additional ground the family court cited section 20-7-1572(6) that provides for TPR if:

the parent has a diagnosable condition unlikely to change within a reasonable time including, but not limited to, alcohol or drug addiction, mental deficiency, mental illness, or extreme physical incapacity, and the condition makes the parent unlikely to provide minimally acceptable care of the child. 

S.C. Code Ann. § 20-7-1572(6) (Supp. 2005).
The family court heard testimony from Stephen M. Gedo, Jr., Ph.D., Cheryl Fortner-Wood, Ph.D., Kim Rosborough, MSW, and Janis D. Browning,
D.O.  
Dr. Gedo believed Mother needed life long medication and had the potential to become suicidal again.  He stated the greatest predictor for suicide is past attempts, followed by having relatives who attempt suicide.  Mother has two uncles who committed suicide.  Dr. Gedo had concerns about the safety of D. and G. if they were returned to Mothers custody.  
Dr. Cheryl Fortner-Wood testified that Andrea, Scott, and the children had formed a secure attachment.  Dr. Fortner-Wood opined that removing the children from an environment with a secure attachment would adversely impact the childrens development.  
Kim Rosborough testified as an expert in child psychology, trauma to children, and childrens therapy.  Rosborough expressed concern about Mothers history of treatment failures.  She stated that children can be a significant stressor for a parent and the stress of caring for the children may contribute to continued recurrences of depressive episodes.  Rosborough observed that Mother had been stable without having the stress of having the children with her. 
Dr. Browning testified Mother had made significant progress with her depression, functioning well with goals, and trying to improve her situation.  However, Dr. Browning noted Mother discontinued her treatment because of concern her treatment may adversely affect her case.
Based on the collective and uncontradicted testimony of Dr. Gedo, Dr. Fortner-Wood, and Rosborough, the family court concluded Mothers mental status fit within the statutory classification in 20-7-1572(6).  Moreover, Mothers own expert, Dr. Browning, testified to the likelihood that Mother would experience recurrences of her depression.  
III.  Best Interest 
Once a statutory ground has been proven, section 20-7-1572 requires that the best interest of the child must be served by the parental rights being terminated.  In a TPR case, the best interests of the child are the paramount consideration.  S.C. Dept of Soc. Servs. v. Smith, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000).
Cindy Rawlings, the owner and director of D. and G.s current daycare center, testified the children were always late when Mother brought them to day care and that Mother appeared to be more focused on her own needs rather than on the childrens.  Rawlings stated that Mother was the worst parent Ive ever seen, and she claimed Mother verbally abused D.  Andrea helped with D. and G.s tuition and supplies for the daycare.  Since Andrea received custody of D. and G., Rawlings testified the children have arrived on time, appear to be happy, and have a good relationship with Andrea.  
Dr. Cheryl Fortner-Wood testified that Andrea, Scott, and the children have a secure attachment and removing the children from that secure attachment environment would adversely impact the childrens development.  Given Mothers suicide attempts by overdose and depression, the childrens lives with Mother lacked stability and security.  Dr. Gedo had concerns about the safety of D. and G. if they were returned to Mothers custody.  Moreover, Andrea and Scott have been able to provide for D. and G. financially and emotionally, whereas Mother has not.  

The family court found:
Given [Mothers] multiple suicidal gestures, multiple hospitalizations, abuse of illegal and prescription drugs, the stressor that the children constitute for her, and her diagnoses, this Court finds that returning the children to [Mother] will constitute unreasonable risk to the children, and to [Mother] herself.  [Mothers] recurrent depression has served a paralyzing effect on her ability to parent.

IV. Attorneys Fees
It is well settled that an award of attorneys fees is within the sound discretion of the trial judge and will
not be disturbed absent an abuse of that discretion.  Smith v. Smith, 308 S.C. 492, 496, 419 S.E.2d 232, 234-35 (Ct. App. 1992).  However, [a]ttorneys fees are not recoverable unless authorized by contract or by statute.  S. C. Dept of Soc. Servs. v. Tharp, 312 S.C. 243, 245-46, 439 S.E.2d 854, 856 (1994) (citing Hegler v. Gulf Ins. Co., 270 S.C. 548, 243 S.E.2d 443 (1978)).
Section 15-77-300 of the South Carolina Code (Supp. 2005) provides attorneys fees for a prevailing party in a civil action brought by the State or a State subdivision such as DSS.  However, this case was a private cause of action for termination of parental rights.  Additionally, although section 20-7-420 of the South Carolina Code provides the family court with a basis for awarding attorneys fees to a spouse in marital litigation, that section has no application to private actions for the termination of parental rights.  See S.C. Code Ann. § 20-7-420 (Supp. 2005).  Therefore, the family court erred in awarding attorneys fees.  
CONCLUSION
The family court properly terminated Mothers parental rights based on Mothers failure to support, Mothers diagnosable condition, and because termination was in D. and G.s best interests.  Thus, the termination of Mothers parental rights is affirmed.  However, no contract or statute provided for attorneys fees for this case; therefore, the family court erred in awarding attorneys fees.  The award of attorneys fees is thereby vacated.  Accordingly, the family court is
AFFIRMED IN PART AND VACATED IN PART. 
ANDERSON, KITTREDGE, and SHORT, JJ., concur.

[1]  We decide this case without oral argument, pursuant to Rule 215, SCACR.