**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Michael Burke and Amy Burke, Respondents,

v.

James Preston Lusk, Sandy Tora Crawford, and James Edwin Lusk, Defendants,

Of whom James Preston Lusk is the Appellant.

In the interest of a minor under the age of eighteen.

Appellate Case No. 2018-000377

---

Appeal From Spartanburg County
Kelly Pope-Black, Family Court Judge

---

Unpublished Opinion No. 2019-UP-082
Submitted January 25, 2019 – Filed February 13, 2019

---

**AFFIRMED**

---

J. Benjamin Stevens and Jonathan William Lounsberry, both of The Stevens Firm, P.A., Family Law Center, of Spartanburg, for Appellant.

Christopher David Kennedy and N. Douglas Brannon, both of Kennedy & Brannon, P.A., of Spartanburg, for Respondents.

Beth McElroy Bullock, of Beth M. Bullock, PA, of Cherokee, for the Guardian ad Litem.

———————

**PER CURIAM:** James Preston Lusk (Father) appeals the family court's order terminating his parental rights to his minor child (Child) and ordering him to pay the guardian ad litem (the GAL) fees. Father argues clear and convincing evidence does not support termination of parental rights (TPR) based on failure to visit and failure to support, and the family court erred in ordering him to pay the GAL fees because the court did not consider his ability to pay. We affirm.[1]

"In appeals from the family court, this [c]ourt reviews factual and legal issues de novo." *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). "[D]e novo review neither relieves an appellant of demonstrating error nor requires [this court] to ignore the findings of the family court." *S.C. Dep't of Soc. Servs. v. Smith*, 423 S.C. 60, 67, 814 S.E.2d 148, 151 (2018) (quoting *Lewis v. Lewis*, 392 S.C. 381, 389, 709 S.E.2d 650, 654 (2011)). Thus, this court is "not required to ignore the fact that the family court, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony." *Id.*

The family court may order TPR upon finding one or more of twelve statutory grounds is satisfied and TPR is in the best interest of the child. S.C. Code Ann. § 63-7-2570 (Supp. 2018). "Because terminating the legal relationship between natural parents and a child is one of the most difficult issues an appellate court has to decide, great caution must be exercised in reviewing [TPR] proceedings and [TPR] is proper only when the evidence clearly and convincingly mandates such a result." *S.C. Dep't of Soc. Servs. v. Roe*, 371 S.C. 450, 455, 639 S.E.2d 165, 168 (Ct. App. 2006).

We find clear and convincing evidence showed Father willfully failed to support Child. *See* S.C. Code Ann. § 63-7-2570(4) (Supp. 2018) (providing a statutory ground for TPR is met when "[t]he child has lived outside the home of either parent for a period of six months, and during that time the parent has wil[l]fully failed to support the child."); *id.* (providing a parent has failed to support his child when he "has failed to make a material contribution to the child's care."); *id.* ("A material contribution consists of either financial contributions according to the

———————

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.

parent's means or contributions of food, clothing, shelter, or other necessities for the care of the child according to the parent's means."); *Stinecipher v. Ballington*, 366 S.C. 92, 100, 620 S.E.2d 93, 98 (Ct. App. 2005) (holding a parent was not relieved of his duty to support his child merely because the custodians never requested support).  Amy Burke testified Child had lived with her and her husband, Michael Burke (together, the Burkes) since 2013, and Father acknowledged signing a temporary custody and guardianship agreement relinquishing custody of Child to Amy in July 2014.  Thus, the evidence clearly and convincingly showed Child lived outside of Father's home for a period of more than six months.  Father testified he purchased ingredients to bake a cake for Child in October 2015 and an outfit for Child in December 2015 but admitted he had no receipts showing he purchased anything for Child between the months of January 2012 and October 2015, and he acknowledged the Burkes purchased Child's clothing and food while she lived with them.  Thus, clear and convincing evidence showed Father failed to provide any material contributions to Child's support from the time he relinquished custody in July 2014 until October 2015.  Further, the only purchases in 2016 were toys; however, toys do not constitute material support.  *See S.C. Dep't of Soc. Servs. v. Seegars*, 367 S.C. 623, 630, 627 S.E.2d 718, 722 (2006) ("Toys are not included in this definition and will not be considered by [this court] in concluding whether [the parent] made a material contribution to [his child].").

Additionally, we find Father's failure to support was willful.  *See* § 63-7-2570(4) ("The court may consider all relevant circumstances in determining whether or not the parent has wil[l]fully failed to support the child, including requests for support by the custodian and the ability of the parent to provide support."); *S.C. Dep't of Soc. Servs. v. Broome*, 307 S.C. 48, 52, 413 S.E.2d 835, 838 (1992) ("Whether a parent's failure to visit or support a child is 'willful' within the meaning of the statute is a question of intent to be determined in each case from all the facts and circumstances."); *Smith*, 423 S.C. at 81, 814 S.E.2d at 159 ("Conduct of the parent [that] evinces a settled purpose to forego parental duties may fairly be characterized as 'willful' because it manifests a conscious indifference to the rights of the child to receive support and consortium from the parent." (alteration in original) (quoting *Broome*, 307 S.C. at 53, 413 S.E.2d at 839)).  According to Father, he was employed full-time from Child's birth in 2010 until sometime in 2016, and based on his financial declaration, he earned a surplus of at least $400 each month that he could have used to contribute to Child's support.  Father spent an estimated $75 on entertainment and $150 on clothing for himself each month.  Under these circumstances, we find Father's failure to provide support for several years evinced a settled purpose to forego the parental duty of support.  *See S.C. Dep't of Soc. Servs. v. M.R.C.L.*, 393 S.C. 387, 395, 712 S.E.2d 452, 456-57 (2011)

(considering a mother's choice to spend fifty dollars per month to care for her dogs during the seventeen months her child was in foster care in determining willfulness and finding she had means to provide financial support but chose to spend that money on other items). Accordingly, we find clear and convincing evidence showed Father willfully failed to support Child.

Next, we find clear and convincing evidence showed Father willfully failed to visit. *See* S.C. Code Ann. § 63-7-2570(3) (Supp. 2018) (providing a statutory ground for TPR is met when "[t]he child has lived outside the home of either parent for a period of six months, and during that time the parent has wil[l]fully failed to visit the child."); *id.* ("The court may attach little or no weight to incidental visitations, but it must be shown that the parent was not prevented from visiting by the party having custody or by court order."). Amy testified Father's family only had three visits with Child in 2015: one overnight visit in June 2015, and a visit in October and December. Three visits over the course of a year is insufficient to maintain a relationship with a child, especially because Father lived less than an hour away. *See* § 63-7-2570(3) ("The distance of the child's placement from the parent's home must be taken into consideration when determining the ability to visit."). Amy testified she always dropped Child off and picked her up at Father's grandmother's house, who was the only person who ever called to arrange visits. Amy denied taking any action to prevent visitation with any member of Father's family in 2015; she stated Father never called to ask about Child or to visit Child, and the last time he contacted her was August 2014. Father testified he traveled for work until the end of 2015; however, he admitted he was only gone four days and provided no reason he could not visit Child the three days each week he was home. We find the forgoing conduct "evince[d] a settled purpose [by Father] to forego parental duties" and thus showed his failure to visit was willful. *See Smith*, 423 S.C. at 81, 814 S.E.2d at 159.

It is undisputed Father visited Child twenty-one times between April 2017 and the TPR hearing; however, we find those visits were judicially-motivated. *See S.C. Dep't of Soc. Servs. v. Cummings*, 345 S.C. 288, 296, 547 S.E.2d 506, 510-11 (Ct. App. 2001) (holding the court may consider "[a] parent's curative conduct after the initiation of TPR proceedings . . . on the issue of intent; however, it must be considered in light of the timeliness in which it occurred"); *id.* at 296, 547 S.E.2d at 511 ("Rarely does judicially-motivated repentance, standing alone, warrant a finding of curative conduct."). Based upon Father's sporadic visitation between July 2014 and February 2016, we find clear and convincing evidence showed Father failed to visit.

Further, viewed from Child's perspective, we find TPR was in Child's best interest. *See Smith*, 423 S.C. at 85, 814 S.E.2d at 161 ("In a TPR case, the best interest of the child is the paramount consideration."); S.C. Code Ann. § 63-7-2620 (2010) ("The [interest] of the [child] shall prevail if the [child's] interest and the parental rights conflict."); S.C. Code Ann. § 63-7-2510 (2010) ("The purpose of [the TPR statute] is to establish procedures for the reasonable and compassionate [TPR] whe[n] children are abused, neglected, or abandoned in order to protect the health and welfare of these children and make them eligible for adoption . . . ."); *S.C. Dep't of Soc. Servs. v. Janice C.*, 383 S.C. 221, 230, 678 S.E.2d 463, 468 (Ct. App. 2009) ("A primary objective of the TPR statutes is to free children for the stability adoption can provide."); *S.C. Dep't of Soc. Servs. v. Cameron N.F.L.*, 403 S.C. 323, 329, 742 S.E.2d 697, 700 (Ct. App. 2013) ("[T]his court has considered future stability when determining whether TPR is in a child's best interest."). Child was between two and three years old when the Burkes' residence became her primary home. When Father formally relinquished custody in 2014, Child was almost four years old. The evidence shows Father made little effort to visit with or contact Child from 2013 until the instant TPR action was filed, which likely affected Child's bond with him and reinforced Child's dependence upon the Burkes. *See Cameron N.F.L.*, 403 S.C. at 329, 742 S.E.2d at 700 (providing our supreme court "has considered bonding when determining whether TPR is in a child's best interest"). The GAL reported Father stated he was not in a position to have custody of Child, and his father was more stable and suitable to provide Child with a home and other necessities. Thus, it is questionable whether Father can or will provide a home for Child. Further, the GAL noted Child had ongoing physical and mental health issues that required attention and treatment, and she expressed concern for Child and opined Child desperately needed permanency, closure, and to be with caregivers who had the time and resources to devote to providing for her needs. Additionally, Father's expert, Dr. Allison Foster, opined Child's behavior may improve in a stable home because closure would promote stability. Based on the foregoing, we find TPR is in Child's best interest.[2]

Finally, we find the family court did not err in ordering Father to pay $6,325 in GAL fees and reimburse the Burkes for $2,625 in fees already paid. *See* S.C. Code Ann. § 63-3-850(B) (2010) ("In determining the reasonableness of the [GAL] fees

---

[2] Although Father asserts this court should apply the factors in *Moore v. Moore*, 300 S.C. 75, 79-80, 386 S.E.2d 456, 458 (1989), we find the *Moore* factors are inapplicable. *See Charleston Cty. Dep't of Soc. Servs. v. King*, 369 S.C. 96, 104, 631 S.E.2d 239, 243 (2006) ("The *Moore* factors cannot apply in the [TPR] situation because that situation is governed by statute.").

and costs, the court must take into account: (1) the complexity of the issues before the court; (2) the contentiousness of the litigation; (3) the time expended by the guardian; (4) the expenses reasonably incurred by the guardian; (5) the financial ability of each party to pay fees and costs; and (6) any other factors the court considers necessary."); *see also Loe v. Mother*, 382 S.C. 457, 473, 675 S.E.2d 807, 816 (Ct. App. 2009) ("In reviewing the reasonableness of [the GAL] fees, the family court erred in applying the factors indicated in *Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E.2d 313 (1991), rather than the factors mandated by the statute."). Here, the family court did not make specific findings in directing Father to pay the GAL fees; however, under de novo review, this court may find facts in accordance with our view of the preponderance of the evidence. *See Stoney v. Stoney*, 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018) (providing this court reviews family court matters de novo); *Lewis*, 392 S.C. at 384, 709 S.E.2d at 651 (noting this court may "find facts in accordance with its view of the preponderance of the evidence"). Father does not dispute the amount of the award, but he argues the family court erred by ordering him to pay GAL fees without considering his ability to pay. Thus, the only relevant statutory factors are Father's financial ability to pay and "any other factors the court considers necessary." *See* § 63-3-850(B). Father testified he incurred significant fees and costs in defending the TPR action, and his family had helped him pay those fees and costs. In concluding the parties were responsible for their own attorney's fees, the court noted the financial condition of Father was not conducive to pay an award of attorney's fees and costs, and Father's family covered about seventy percent of his attorney's fees. Based on Father's financial declaration, his fixed monthly expenses consisted of $1,290, and he explained that after the litigation concluded, he would be able to resume working, earning slightly more than the imputed amount of $2,222 per month. Thus, Father should have a surplus of approximately $1,000 per month. Based on the foregoing, we find Father had the ability to pay the GAL fees. Additionally, we find the evidence shows the GAL fulfilled her statutory duties by conducting an independent, balanced, and impartial investigation. *See* S.C. Code Ann. § 63-3-830(A) (2010) (providing a GAL's duties and responsibilities include "(1) representing the best interest of the child; [and] (2) conducting an independent, balanced, and impartial investigation to determine the facts relevant to the situation of the child and the family"); *see also Pirayesh v. Pirayesh*, 359 S.C. 284, 297, 596 S.E.2d 505, 512 (Ct. App. 2004) ("[Although] the ultimate work product of the guardian is not specifically listed [as a statutory factor], it certainly qualifies as another factor 'the court considers necessary.'"). Accordingly, we find the family court did not err in awarding GAL fees.

**AFFIRMED.**

**HUFF, SHORT, and WILLIAMS, JJ., concur.**